# FREDERICK W. SEIBERT

*vs.*

# STATE OF MARYLAND.

*Bastardy proceedings: evidence; jury not left to speculation; relations with other men; not admissible, merely to affect character; period of gestation. Examination of witnesses: involved questions. Bribery: attempt at; evidence. Rebuttal and surrebuttal.*

In bastardy proceedings, evidence sought to be introduced to show that not until a short time before the birth of the child did the prosecuting witness first tell the traverser that he was the father of her expected child, is irrelevant and immaterial.

p. 311

In such proceedings, evidence of the asociation of the prosecuting witness with men other than the traverser, under compromising circumstances, near the time when the child must have been begotten, is admissible as tending to show the traverser may not be guilty, but not for the mere purpose of reflecting upon her character.                p. 314

In general, the period of gestation may be taken as 285 days, or 40 weeks, before the birth of the child.          p. 315

Where there was no evidence that one of the parties, who had been mentioned as the father of the child, ever had any intercourse with the prosecuting witness, there is no error in excluding testimony as to him.                  p. 315

The jury in such cases should not be allowed to indulge in mere speculation.                                    p. 315

Where a question desired to be propounded is complicated and confusing, it is no error for the court to refuse to permit it and to direct counsel to frame it in simpler language.     p. 316

Proof of an attempt to bribe a witness has an important effect on the jury, and should be admitted in evidence.       p. 317

Where a witness for the State has testified in rebuttal, over the objection of the traverser, the latter should be given opportunity to contradict him in surrebuttal.       p. 317

*Decided November 21st, 1918.*

Appeal from the Circuit Court for Harford County. (HARLAN, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Harry S. Carver,* for the appellant.

*Ogle Marbury, Acting Attorney General,* and *Philip B. Perlman, Assistant Attorney General* (with whom were *Albert C. Ritchie, the Attorney General,* and *Walter R. McComas, the State's Attorney for Harford County,* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellant was convicted of bastardy in the Circuit Court for Harford County. The indictment alleges that the child was begotten on the 20th day of February, 1917, and was born on the 22nd day of November, 1917. There are twenty-four bills of exception in the record, all of them presenting rulings of the Court on the admissibility of evidence. The first and eleventh were not pressed at the hearing and some of the others can be grouped in our consideration of them.

The 2nd, 3rd, 4th and 5th embraced questions which were apparently intended to show that the prosecuting witness, Rosa Wirsing, had met the traverser at different times be-

tween the latter part of February and the 20th of October, 1917, when he was accused before the justice of the peace of being the cause of her condition, which resulted in the birth of the child on the 22nd of November. One question referred to the 8th of April, one to some time in May or June, one to a time in September, and the last was whether she had seen the traverser between the latter part of February and the 20th of October. The evidence sought to be elicited by those questions was clearly irrelevant and immaterial. It is said by the attorney for the appellant that, inasmuch as the prosecuting witness testified that she first told the traverser on October 20th that he was the father of the child, of which she was then pregnant, he had the right to inquire why she had not previously told him. In the first place, she did not testify that that was the first time she had told him. The question was: "Did you ever tell Frederick W. Seibert that he was the father of your child?" and she answered: "On the 20th of October, the day he was arrested." She might very well have recalled that time, as she appeared before the justice of the peace then, and he called upon her on that day in reference to the charge, without meaning that they had never talked about it at any other time; but assuming that she meant that she did not tell him at any other time, the evidence sought to be introduced by those questions would not have been material. One of the occasions referred to was when she met him at the house of his sister when one of the latter's children was baptized; another was when she was driving down the road from her father's house to her brother's house and the traverser was driving behind her in the same direction, and another was when the traverser and his sister went to the house of the father of the prosecuting witness to inquire of her father about a wheat fan. It could not be expected that on such occasions she would accuse the traverser with being responsible for her unfortunate condition. The question in the 5th exception asked the traverser, how often he saw her from the latter part of February until the 20th of October. If in fact he did have sexual intercourse

with her about the 20th of February, which resulted in her pregnancy and the birth of the child, why was it to be expected of her that she would tell him of it? There is no doubt that she did become pregnant, and she did give birth to a child on November 22nd. If he had had intercourse with her, he knew it without being told of it, and it is not likely that she would have told him unless something occurred to cause her to do so—such as his calling upon her the day he was arrested. There was no proffer to follow up the questions by showing admissions or statements by her which would have been admissible, but the object seems to have been to prove simply that she had said nothing to him. The rulings in those exceptions were clearly correct.

The ruling in the 6th exception was also correct. Charles Lieske went with the prosecuting witness, her sister, her two brothers and another witness to Havre de Grace on October 20th, when the charge was preferred against the traverser before the justice of the peace. He was asked: "Coming down from there, what was said by Rosa Wirsing in reference to the parentage of the child?" He replied: "All I know is, I said I didn't think it was Fred's. Lizzie said, We will tell more about it when it was born.'" The Court struck that out, and the 6th exception was taken. It can not be pretended that what Lizzie said was binding on the State, and the answer was not responsive to the question. If the object was to prove that Rosa said nothing, and thereby have the jury infer what is sometimes permissible to be inferred by reason of the silence of a party, no harm was done, as in the answer to the questions immediately following that exception it was testified by that witness that Rosa made no remark, and that was not excluded. She was not called upon to make any remark, as she was then returning from the justice of the peace where she had just made an affidavit to the effect that the traverser was the father of the child of which she was pregnant, and she was not called upon to discuss the question with that witness.

While Charles Lieske was still on the stand he was asked about the time of his being at a place called "Little Neck," which we understand to be the name of a farm where he worked. He said he left there on account of his health in January; that he went to the hospital on the 17th of January. He was then asked: "About that time did you remember Rose Wirsing being over there with Martin Rider?" and replied: "Yes; her and her brother." He was later asked: "What did you see them (Martin Rider and Rosa Wirsing) doing there at Little Neck; in what attitude were they?" The Court ruled it out, as "beyond the limit, before the middle of January." That is presented by the 7th exception. In the 8th Helen A. Lieske was asked whether Rosa was at her brother Fred's at Little Neck with Martin Rider in January, and in the 9th there was a proffer to prove by that witness that Rosa Wirsing in January, 1917, "sat on the lap of Martin Rider in a caressing way." It was further offered to prove by that witness "that in October, 1916, she saw her brother Fred at Rosa Wirsing's father's, when Rosa was there, and saw her brother Fred with his hands up her clothes feeling her legs." We can consider those exceptions together.

The general rule announced in 3 *R. C. L.*, Sec. 44, on page 763, was quoted in *Jones v. State,* 132 Md. 142, and is as follows: "Evidence is admissible to show that the mother had sexual intercourse with other men at about the time the child was begotten, and the mother may be interrogated on this point, but evidence tending to show that she had illicit connection with other men, and interrogatories made with a view to elicit that fact from her must be confined to a period when in the course of nature it would have been possible for the child to be the result of such intercourse." It will be observed that in none of the exceptions just referred to was there an offer to prove that the prosecuting witness had sexual intercourse with Rider or Lieske. The most the appellant could claim would be that it might be inferred that there was by reason of the liberties allowed by her. We will speak

later of the time, but it will be seen that in 7 *C. J.* 990, Sec. 117, the subject of the relation of the prosecuting witness with men other than the one on trial is considered. The rule is thus stated there: "Evidence that plaintiff kept company with other men at the time when the child might have been begotten is not competent unless offered to show sexual connection with such men. It is not necessary, however, in order to make such evidence competent, that defendant should undertake to adduce positive evidence of complainant's having had illicit connection with other men. He has a right to pursue any line of investigation that is directed to developing conduct on her part that may even remotely suggest such relation. Consequently association with other men under suspicious circumstances near the period of conception should be allowed to be considered by the jury. But evidence of such association not within the period of gestation is immaterial, except as bearing upon the nature of their relationship."

Such evidence may sometimes be very material—especially when the traverser denies the paternity of the child and when he denies that he had ever had sexual intercourse with the prosecuting witness, as this traverser did—but it is of a dangerous character unless it is carefully guarded. It may lead to the investigation of collateral matters and take the jury away from the real issue to be determined by it. While it is proper that some latitude be allowed, in order to protect a man who is falsely charged, he can not be permitted to introduce testimony merely for the purpose of reflecting upon the prosecuting witness. Some discretion must be allowed the trial Court. In this case, there was no proffer to show that the prosecuting witness did have sexual intercourse with Martin Rider and apparently the evidence sought to be introduced, as stated in the 7th exception, referred to the same occasion that the witness Helen A. Lieske had reference to as proffered in the 9th exception. Without something more definite than that proffer is, to show that it was followed by sexual intercourse, a jury would not be justified in inferring it. If what was proffered occurred in the presence of Charles

Lieske and his sister, and there was anything more sugges-
tive of sexual intercourse, the evidence of it would surely
have been offered.

But, regardless of that, Rider was there about the middle
of January. That was about 310 days before the birth of
the child. There was no evidence before the jury as to the
period of gestation, but we understand that usually it does
not exceed 300 days, and is generally less than that. In
*Souchek* v. *Karr*, 78 Neb. 488, 111 N. W. 150, the Court
quoted from *Masters* v. *Marsh,* 19 Neb. 458, 27 N. W. 438,
where it was said: "The period of gestation may be safely
stated as a general proposition at from 252 to 285 days. Al-
lowing the greatest latitude of inquiry, I think it should be
confined to a period of time between the lowest number of
days above stated and that of 300 days before the birth of the
child." In 3 *Am. & Eng. Ency. of Law,* 884, it is said:
"According to Lord Coke, the period, by the law of Eng-
land, is fixed at forty weeks. And the present doctrine seems
to be that, while there is no absolute rule on the subject,
forty weeks is usually regarded as the period. However,
much discretion may be exercised in allowing a longer or
shorter space, according to the special circumstances of the
case." See also 7 *C. J.,* Sec. 129, page 995.

Inasmuch as there was no evidence tending to show, or from
which it could properly be inferred that there was an unusual
time before the birth of the child, and as there was no direct
evidence that Rider had had sexual intercourse with the
prosecuting witness at any time, to have admitted the testi-
mony offered in reference to him would have permitted the
jury to indulge in mere speculation without sufficient ground
to find that there had been such intercourse. The proffer in
the 10th exception related to an alleged incident in October,
1916, without being followed up by any other evidence as to
that party, and was clearly inadmissible. There was there-
fore no error in the 7th, 8th, 9th and 10th exceptions. The
11th was abandoned, and properly so, as there can be no
doubt about the correctness of that ruling. Nor can there be

any doubt about the ruling in the 12th exception. What Witkowski had told the parties named, out of the presence of the prosecuting witness, was not admissible. He had not testified in chief to anything that could have justified that evidence on cross-examination. He might have been asked whether he had had intercourse with Rosa Wirsing, if brought within the proper time, but such question was not asked him. If he had told those parties that he had such intercourse, the appellant would have had no reason to offer him $250 to testify to that effect, as he could have been summoned and made to testify, if such was the case.

We can not say that there was reversible error in the 13th exception. The question was confusing and there were really several questions in the one. The Court told the attorney to put the question in words the witness could understand, and told him to ask another question, not to repeat the one asked, but to ask a new question, which he did not do.

The questions in the 14th, 15th, 16th, 17th, 18th, and 19th exceptions should have been allowed. The witness Sanner had testified that the traverser had offered him $100 to testify that it was he, and not the traverser, "who had something to do with Miss Wirsing." The questions in those exceptions were evidently intended to show that his relations with the prosecuting witness were such as might reflect upon the credibility of his testimony. If he was a special friend of the prosecuting witness, he would have been more interested in her case than if he was not. The jury therefore had the right to know what their relations were. We do not regard the question in the 20th as material, and that in the 21st was too indefinite. The one in the 22nd was admissible for reasons given in reference to the 14th to the 19th, inclusive. The inquiry in the 23rd and 24th should have been permitted. Edward Witkowski had been allowed to testify in rebuttal that the traverser had offered him $250 to testify that he had had intercourse with the prosecuting witness. In surrebuttal Charles Lieske was called, and he testified that he was with the traverser at the time and place named; that he

was present all of the time, and was asked whether the conversation Witkowski testified to took place. That was ruled out. It is true that Witkowski had testified that the traverser took him behind the canning house spoken of, but Lieske swore that he was present all of the time. It was for the jury to decide between them, but the traverser unquestionably had the right to prove, if he could, that no such conversation took place. Proof of an attempt to bribe a witness has a very important effect on a jury. In the 24th exception the traverser asked whether the witness was there before Witkowski came, or Witkowski was there when he came. It was ruled out, the Court stating that it was not surrebuttal; that traverser had gone as far as he could on surrebuttal. The attorney stated that he would put the question he wanted to ask the witness, but the Court said: "No, sir. You have asked him all you can on surrebuttal." The witness for the State had testified in rebuttal, over the objection of the traverser, and there was no opportunity to contradict him until the surrebuttal. The testimony was admissible and there was error in ruling it out.

For reasons we have given, the judgment must be reversed.

*Judgment reversed, and case remanded for a new trial.*