STATE OF NORTH DAKOTA, Respondent, v. DOUGLAS KVENMOEN, Appellant.

(232 N. W. 475.)

Opinion filed October 14, 1930.

*Clair F. Brickner,* for appellant.

*John C. Pollock,* for respondent.

BURR, J. The complaining witness charges the defendant with being the father of her child. The jury sustained the charge, an order for judgment and judgment were entered thereunder, and the defendant appeals.

The child was born in the House of Mercy on January 27, 1929. The superintendent, who had oversight of the House of Mercy said the child was normal, was fully developed though it weighed but four pounds when born, and that she had ample opportunity for observation as seventy babies per year are born in that Home. The only doctor who testified stated the normal period of gestation was from two hundred seventy-five to two hundred eighty days and that it was possible for a child to be born in a gestation period of two hundred sixty-one days "and appear normal at birth."

The complaint was not made until the 8th of April, 1929, and the preliminary examination was held April 12th.

There are sixteen specifications of error, eight of them dealing with the claim that the court unduly limited the cross-examination of the complaining witness, and prevented the defendant from offering proof to show that on or about the time of conception the complaining witness was in the company of others under such circumstances as would justify the jury in finding that others had intercourse with the complainant at that time.

In the district court complainant said the first time she met defendant "was about the last of April" 1928. She met him again two days later and a third time "a couple of weeks" thereafter and at this third meeting had intercourse with him, fixing the date as May 10th. She testified to three acts of intercourse in all, the second in June and the

last in September. At the preliminary examination she testified to three acts—first in June, another in June and one about the first of July. In connection with this part of the examination the defendant offered to prove on cross-examination of the complaining witness "that during the month of May she was at a house party with ————( naming two men) and an unknown person ———— and these persons were the only persons present in said house and that they stayed at such house until the early morning hours;" and "that the complaining witness ———— during the month of May was out with one ———— in a Chrysler automobile from eight-thirty p. m. until the hour of one-thirty a. m." During the cross-examination of the complaining witness, defendant asked her: "And didn't ———— take you out riding in his automobile and you stayed out until one o'clock at night with ———— along about the time you have testified that you had intercourse with Douglas Kvenmoen?" The state objected on the ground that it was not proper cross-examination and that it would be proper "if they can bring the persons who will admit it." The court sustained the objection.

There were other offers of proof along the same lines. For example, she was asked "Isn't it a fact that during the month of May you and your sister stayed and slept all night in the Burrell Apartments in company with two men?" She denied this and then she was asked whether she had not told a Mr. B. that in company with her sister she had stayed "all night with two men," at the place indicated. On objection the court ruled this out also. The defendant then offered to prove that this witness with "her sister occupied the same room and stayed at the Burrell Apartments during May, 1928 with two men." This offer of proof was objected to by the state and disposed of by the court with the remark: "She has already answered that question. She was asked that question and she answered it."

At the preliminary examination the complaining witness stated that her first intercourse with the defendant was on June 10, 1928. She testified that he had called for her in a "little red roadster;" which she thought was an Oldsmobile; that they went out riding in this car and that the first intercourse took place therein. On the trial in the district court it developed that this red Oldsmobile roadster was purchased from the J. & L. Motor Company of Fargo. The Motor Com-

pany had sold a Nash car to a man in Lake Park, Minnesota, and taken this Oldsmobile in trade, and a member of the Motor Company brought the Oldsmobile from Minnesota. It was then sold to the defendant on his order dated June 15; but not delivered for about a week. At this time it was black, but the color was changed to red before delivery. There is nothing in the testimony which contradicts the record in this transaction. In addition the defendant and his father testify this is the only car defendant ever had, and it was bought for the defendant by his father. The father had owned a car for several years, including a black delivery truck—a Ford—which his boys drove. The defendant says this testimony shows conclusively the complaining witness was wrong when she stated intercourse took place June 10th or at any time. The defendant admits that he took the complaining witness for a ride in the car about the middle of July but denies any intercourse whatever with her at any time. On the trial in the district court the complaining witness changed her testimony as to time and said the first intercourse took place in May in the red roadster which she thought was an Oldsmobile car, and that on June 4, 1928, she knew she was pregnant saying: "Yes, I did; well I wasn't positive." that some one told her that the date of the birth of the child was too soon for the date she gave as the date of intercourse and that therefore she knew she would have to change her testimony and "put it back in April or May,"—the specific question addressed to her being, "Didn't you know you had to change your testimony to put it back in April or May in order to get Douglas on the charge, didn't you." To which she answered, "Yes." On the trial of the action she stated positively and frequently that the first intercourse took place in May in this roadster. If it did, it could not have taken place in this "little red roadster" if the record of the Motor Company as to the time it purchased the roadster and afterwards sold it to the defendant be correct. The complaining witness also admitted that she had had sexual intercourse in January, 1928, with another man, subsequently married, and that she was "out with him," this other man, in the spring, when "he was driving his automobile" but not in May; and that she did not have intercourse with him in April or May. She admitted she never told any one definitely that the defendant was the father of her child until about the time the complaint was made, and then on the urging of

the Home officials who wanted her to state who the father is. She admitted that a young man inquired of her regarding her condition, and "he wanted to know who was to blame and I told him I wouldn't tell him." The young man testified he asked her if it were the defendant "and at first she refused to say either, as I knew Douglas, I kept asking, she said it was Douglas, but she wasn't going to blame him." The following day he told the defendant, and defendant went to see her. She admits his call and that she told him she would not tell him who the father was, that she did not "tell him right out" and that she told him she was not blaming any one. He says she told him it was none of his business and on the preliminary examination she testified she told him "it was none of his business." The complaining witness is young being only eighteen years of age at the time of trial. There were some other discrepancies between her testimony given at the preliminary examination and her testimony given at the trial. Some of these were on minor matters and such as some might think were to be expected. Naturally she might be confused, embarrassed and depressed with a somewhat hopeless feeling.

But there was a clear conflict of testimony on the main issue and the testimony of the complaining witness herself was such as might, in the eyes of a jury, render it doubtful. This made it all the more important that her relations with other men, on or about the time of conception, should be known. It is true the jury found as she testified. They may have considered she was confused and embarrassed rather than wilfully falsifying, and mistaken as to the make and color of the roadster on the first occasion. Thus they may have considered that the assignment of the date as June 10th was an error and that she was merely mistaken. However, in view of the conflict in the testimony as to the paternity of the child, the defendant had the right to prove, if he could, that on or about the time set by the complaining witness as the date of intercourse, that is about May 10, 1928, she had been in the company of other men frequently, alone at unseasonable hours and under such circumstances as would give opportunity to them to have intercourse with her, especially when an offer was made to prove that she had been alone with two men all night in certain apartments. The trial court seemed to be under the impression that it was not sufficient

to show this opportunity only but it was necessary to prove that the other men had intercourse with her. This was correct in the main, but did not require confession or ocular evidence. It could be proved by circumstances, and the jury had the right to know these things. The court stated that it would permit the testimony if these men would come forward and admit they had intercourse with her. This is too narrow an interpretation of the rule. There is no rule better established than that the defendant should have the opportunity of proving that the complaining witness kept company with other men at the time when the child must have been conceived. Of course this must be offered to show intercourse with such men; but as stated in 7 C. J. 990: "It is not necessary, however, in order to make such evidence competent, that defendant should undertake to adduce positive evidence of complainant's having had illicit connection with other men. . . . Consequently association with other men under suspicious circumstances near the period of conception should be allowed to be considered by the jury." Thus in Burris v. Court, 34 Neb. 191, 51 N. W. 745, it is held "in a bastardy case, where the testimony is conflicting as to the paternity of the child, it is competent for the defendant to prove that about the time the alleged intercourse was had, the complainant, while alone, was frequently visited by a man other than the defendant from one half hour to an hour and a half at a time."

See also Kelly v. State, 133 Ala. 195, 91 Am. St. Rep. 25, 32 So. 56; Guy v. State, 20 Ala. App. 374, 102 So. 243; DeMund v. State, 167 Wis. 40, 166 N. W. 328; Anderson v. State, 65 Utah, 517, 238 Pac. 557; Mensing v. Croter, — Cal. App. —, 280 Pac. 1026.

The trial court not only unduly limited the cross-examination of the complainant in regard to these matters, but erroneously sustained objections to the offer of proof made. There was no objection made to the form of the offer. It was objected to and the objection sustained on the theory that it was immaterial unless the defendant showed by direct evidence that these persons had intercourse with her, or that they would admit it.

There are other specifications of error urged relating to the conduct of the trial and the remarks of the trial judge; but the incidents charged

are not likely to occur on another trial. For the reason assigned the judgment is reversed and a new trial ordered.

BURKE, Ch. J., and NUESSLE, BIRDZELL and CHRISTIANSON, JJ., concur.