[File No. 6066.]

STATE OF NORTH DAKOTA, Respondent, v. GILBERT RUDY, Appellant.

(244 N. W. 28.)

Opinion filed July 30, 1932.

*William Langer,* for appellant.

*Chas. Coventry* and *T. A. Thompson,* for respondent.

CHRISTIANSON, Ch. J.  This is an action brought under the Illegitimacy Act (Laws 1923, chap. 165; §§ 10,500a1–10,500a37, 1925 Supplement) to establish the paternity of a child born out of wedlock.  The

case was tried to a jury and resulted in a verdict finding the defendant to be the father of the child. Judgment was entered pursuant to the verdict. The defendant moved for a new trial; the motion was denied and he has appealed from the judgment and from the order denying a new trial.

The errors assigned on the appeal resolve themselves into two main propositions: (1) alleged errors in rulings on evidence; and (2) whether the evidence is sufficient to sustain the verdict.

The facts necessary to a consideration of the errors assigned are substantially as follows: On March 22, 1931, one Annie Jacobson, an unmarried woman, gave birth to a female child. The day before the child was born, to-wit, on March 21, 1931, Annie Jacobson signed and swore to a complaint charging the defendant herein with being the father of the child with which she was then pregnant and which was born the following day.

Annie Jacobson died on April 17, 1931, before the defendant had been apprehended under the warrant issued upon the complaint. Later the action was continued by the child upon substitution made in accordance with the provisions of the statute. Laws 1923, chap. 165, § 6; § 10,500a17, 1925 Supplement. A preliminary hearing was had at which witnesses appeared and testified. After the hearing the defendant was held to answer and in due time the case came on for trial, and was tried, in the district court of Emmons County, before a jury. The defendant denied the paternity of the child. As said, the jury returned a verdict finding the defendant to be the father of the child.

The evidence discloses that the Rudy and Jacobson families were neighbors; that the defendant and Annie Jacobson had been acquainted for a number of years and that during the spring and summer of 1930 they attended various social activities, such as dances and picnics, together.

Annie's sister Helen testified that on May 10, 1930, she, her sister Annie, the defendant, and a girl named Madge Fitch, returned from a dance about four o'clock in the morning in a car driven by the defendant Rudy; that she and Madge went into the house; that the defendant Rudy drove the car into the garage and that he and Annie Jacobson remained out there for some time. She also testified that on or about June 15th, 1930, she, the defendant, and Annie Jacob-

son attended a dance at one Harts; that after the dance, the defendant, Annie Jacobson, Sidney Tracy and Madge Fitch went home in Tracy's car. Madge Fitch corroborated this and testified that on this occasion they drove to Rudy's home and went into the house; that the defendant Rudy and Annie Jacobson went into a bedroom, closed the door and remained there for some time leaving Tracy and Miss Fitch sitting in the kitchen; that shortly after the defendant Rudy and Annie Jacobson came out of the room, Tracy took Annie Jacobson and Miss Fitch to their home. The undisputed evidence shows that in going to Rudy's home on this occasion they passed the home of Annie Jacobson and that in order to bring the girls back to their home an extra trip of some five miles became necessary. The defendant admitted the incident, but denied that he and Annie Jacobson were in the bedroom with the door closed. The defendant, Rudy, also denied that he upon that occasion or at any other time had any illicit relations with Annie Jacobson.

Annie Jacobson's sister Helen also testified to an incident that occurred at another dance at Harts, June 28th or 29th, 1930, during which the defendant and Annie Jacobson absented themselves from the hall where the dance was going on, and the description she gave of her sister's appearance on their return to the hall (which we deem it unnecessary to detail) was, to say the least, such as to arouse a strong suspicion that their relations and activities had not been wholly Platonic.

There was also testimony of other incidents tending to show that the defendant had sustained intimate relations with Annie Jacobson.

The undisputed evidence shows that on March 21, 1931, Annie Jacobson's mother and Annie Jacobson came to see the defendant. At this time a conversation was had between Annie Jacobson's mother and the defendant. There is a conflict as to what was said; but the defendant admits that at that time Annie Jacobson's mother said to him: "I suppose you know what I came to see you about." That she further asked him if he would marry Annie "to give the child a name." Annie Jacobson's mother testified that in this conversation the defendant admitted that he had had illicit relations with Annie Jacobson but denied that he was the father of the child with which she was then pregnant.

Another witness testified that the defendant, in a conversation with

him relating to the matter, admitted that he had had illicit relations with Annie Jacobson, but coupled this with the statement that he was not the father of the child.

The testimony of the defendant himself is far from satisfactory. Even the cold record discloses lack of candor in answering questions. It gives to the reader the impression that he was not telling the whole truth.

We are wholly agreed that upon the record presented the evidence is ample to sustain the verdict of the jury and that the court was entirely correct in refusing to dismiss the action or advise the jury to return a verdict of not guilty.

The rulings on evidence on which error is predicated involve certain offers of proof relating to alleged improper relations between Annie Jacobson and one Raymond Stewart. Before these offers of proof were made one Dr. Wolverton had testified. Dr. Wolverton's qualifications were conceded. Dr. Wolverton testified that he was the attending physician at the birth of the child; that it was a "full term baby" and that in his opinion the child must have been begotten about June 16, 1930, or within twenty-eight days following that date.

The first offer of proof related to an incident fixed as having occurred on May 23, 1930. The defendant offered to prove that on that day Raymond Stewart and Annie Jacobson, on their return from a dance, drove the automobile in which they were riding into the garage; that when other members of the party later came back to the automobile they found Raymond Stewart and Annie Jacobson in a reclining position in the back seat; that Annie Jacobson's hair and clothes were disordered. The other offer of proof had reference to the conduct of the same parties during August and September, 1930. It is not claimed that any of the specific incidents sought to be proven occurred at a time so that the child could have been begotten if illicit relations between Annie Jacobson and Raymond Stewart had occurred at such times; and the offers of proof stated that the purpose of the evidence was to show the general relations between Annie Jacobson and Raymond Stewart. The record discloses that counsel for the prosecution, as well as the trial court, specifically recognized the right of the defendant to introduce any evidence that he might have tending to show that some one other than he was, or might be, the father of the child.

The offers of proof did not bring them within the rule announced by this court in State v. McKnight, 7 N. D. 444, 75 N. W. 790; and State v. Kvenmoen, 60 N. D. 60, 232 N. W. 475.. Here the evidence, if admitted, would not have shown, or have a tendency to show, illicit relations between Annie Jacobson and Raymond Stewart or an opportunity for such relations at a time when conception might have taken place. The authorities agree that evidence of the nature offered here is not admissible. 7 C. J. pp. 990, 991. The sole question in the case was whether the defendant Rudy was the father of the child. Any evidence relevant to prove or disprove that fact was admissible. Evidence tending to show suspicious relations between the mother of the child and men other than the defendant, at times wholly different from a time at which the child must have been conceived, is not admissible unless coupled with proof showing such relations, or circumstances from which it might reasonably be inferred that such illicit relations continued, at a time the child might have been begotten.

Other assignments of error predicated upon rulings on evidence are, in our opinion, not of sufficient merit to require extended discussion. They have all been considered; and, we fail to find a single ruling that resulted in the exclusion of material, competent evidence offered by defendant, or in the admission to his prejudice of incompetent or immaterial evidence offered by the prosecution.

It follows, therefore, that the trial court was correct in denying a new trial. The judgment and order appealed from must be and they are affirmed.

NUESSLE, BIRDZELL, BURR, and BURKE, JJ., concur.