## TWINING *v.* STATE

[No. 129, September Term, 1963.]

98

*Decided March 10, 1964.*

*Motion for rehearing filed April 2, 1964, denied April 13, 1964.*

The cause was argued on November 14, 1963 before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

The cause was reargued on February 3, 1964 before the full Court.

*Sidney I. Fradkin* for appellant.

*Russell R. Reno, Jr., Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Robert F. Sweeney, Assistant Attorney General* and *T. Bryan McIntire, Jr., State's Attorney for Carroll County,* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment in a bastardy case entered upon a jury's finding of guilt. The only errors alleged are (1) the refusal of the trial court to propound certain questions to the talesmen on their voir dire, and (2) ruling of the trial court upon certain proffers of evidence.

The first question on voir dire requested by counsel for the appellant was whether any member of the panel of prospective jurors, or any member of his or her family, had "ever been in a situation similar to that of the prosecuting witness." It is well settled that the nature and extent of the examination rests in the sound discretion of the trial court. *Grogg v. State,* 231 Md. 530, 532. We find no abuse of discretion here. Just what was meant by the inquiry is not clear. An affirmative reply would seem to call for an admission that the talesman had had a bastard in the family, or had engaged in extra-marital intercourse. It may be questioned whether this would tend to establish bias for or against the accused. Moreover, it is generally recognized that questions having a tendency to disgrace those

required to answer are properly disallowed. See 5 Wharton, *Criminal Law and Procedure* (Anderson ed.), § 1996; 50 C.J.S. *Juries,* § 274. In any event, we think the refusal was not prejudicial. The trial court asked several more general questions designed to elicit whether the prospective jurors were related to or acquainted with the prosecuting witness or her family, and whether for any reason whatever they felt that they could not bring in a fair and impartial verdict based upon the law and the evidence. Cf. *Giles v. State,* 229 Md. 370, 378. The record shows that one prospective juror was eliminated because she answered the last question in the negative.

The other question sought to be propounded related to whether the talesmen would give the accused the benefit of the presumption of innocence and the burden of proof. We find no abuse of discretion here. The rules of law stated in the proposed questions were fully and fairly covered in subsequent instructions to the jury. It is generally recognized that it is inappropriate to instruct on the law at this stage of the case, or to question the jury as to whether or not they would be disposed to follow or apply stated rules of law. See 50 C.J.S. *Juries,* § 275(2). This would seem to be particularly true in Maryland, where the courts' instructions are only advisory. The case of *Lockhart v. State,* 145 Md. 602, 614, is clearly distinguishable because the court was there questioning a particular juror, who had expressed what appeared to be an incorrect opinion as to the law, to ascertain his qualification.

This brings us to the rulings on the evidence. It was shown that the appellant and the prosecuting witness began to "go steady" in March, 1961, when they were each twenty years of age. They became engaged, he gave her an engagement ring, and they rented a furnished house in anticipation of marriage in August. They had sexual relations during the period of the engagement two or three times a week in his car, while parked in her driveway. However, in August the engagement was broken because of a quarrel, and there was no further intercourse until October 31, 1961, when there was a reconciliation. She testified that as a result of that intercourse she became pregnant, missing her menstrual period in November. She was delivered of an eight-pound boy on July 4, 1962. The medical

testimony indicated that conception probably took place about October 4, 1961, but that it could have occurred within a period of thirty days before or after that date.

Counsel for the defendant cross-examined the prosecuting witness as to her relations with one Allen Wolfe and one George Immerwahr in September and October, 1961. She admitted that she had "dated" Wolfe "off and on" during that period, but denied that she was "going steady." When asked if, on a former trial, she had not testified under oath that she had not gone with anyone, or had not had a date with anyone, she said she did not mean that she had not gone out with anyone, but that she had not gone steady. At that point the trial court indicated that it would not permit testimony as to dates with persons other than the accused, unless counsel was prepared to show that she had sexual intercourse with such persons. Counsel for the accused then made a proffer that if permitted he would ask the witness if it were not a fact that after she broke with Twining she took a ring from Allen Wolfe, went to dances with him and to drive-in theaters; that she parked in a car with him. The court overruled the proffer, but stated it would permit a question whether or not she had sexual relations with Wolfe within that period. Counsel asked the question and she denied it, although she admitted she had his class ring and had gone out with him. Counsel also made a proffer that, if permitted, he would ask the prosecuting witness if it were not true that she went out with Immerwahr four or five times in September or October, went to drag-races in his car, parked with him, and went to a drive-in restaurant. There was a similar ruling, excluding the proffered evidence.

Counsel for the appellant called Wolfe as a witness for the defense and elicited from him that he had seen her "once or twice a week" during the critical period, took her to the movies and drag-races, and took her for drives. The court sustained an objection to a question as to whether she "parked" with Wolfe, but indicated that a question as to sexual relations would be in order. Counsel for the appellant then asked the witness if he had sexual relations with the prosecuting witness in September or October, and his answer was no. In cross-examination, Wolfe testified that she told him she was in love with Twining.

George Immerwahr, called by the defense, testified without objection that he took the prosecuting witness out four or five times in his car to drag-races or restaurants. He was not allowed to say that he parked with her, for the court ruled that this would not establish sexual relations. Counsel then asked the witness if he had ever had sexual relations with the prosecuting witness, and he testified he had not.

In ruling as it did the trial court relied upon *Seibert v. State,* 133 Md. 309, 313-314. In that case Chief Judge Boyd, for the Court, had occasion to comment on the general rule that "evidence is admissible to show that the mother had sexual intercourse with other men at about the time the child was begotten, and the mother may be interrogated on this point, * * *." There was testimony that she was seen sitting on the lap of another man "in a caressing way," and on another occasion another man had "his hands up her clothes feeling her legs." The court observed that there was no offer to prove that the prosecuting witness had sexual intercourse with either. "The most the appellant could claim would be that it might be inferred that there was [intercourse] by reason of the liberties allowed by her. * * * Without something more definite than that proffer is, to show that it was followed by sexual intercourse, a jury would not be justified in inferring it."

In *Brennan v. State,* 151 Md. 265, 269, Judge Walsh, for the Court, said: "* * * while the courts permit evidence as to the prosecuting witness' association with other men under suspicious circumstances at or about the time of conception, such testimony should be limited to matters which tend to prove illicit relations between the prosecuting witness and such other men." It is generally recognized that the evidence must support a reasonable imputation of intercourse. See 1 Wigmore, *Evidence* (3d ed.), § 133. In *Leister v. State,* 136 Md. 518, 523, it was held that the trial court properly excluded testimony that the prosecuting witness had frequently gone "buggy riding" or "automobile riding" with another man, since this alone would not have a "sinister or evil" connotation. It would appear that "parking" would have no more sinister connotation at the present day. See also *Brasseau v. Padlo,* 34 A. 2d 186 (Vt.) and the cases collected in 104 A.L.R. 84, 89. "Keeping company"

has been held to be too vague. It has also been said that because a prosecuting witness consents to intercourse under promise of marriage it does not follow that she will do so under other circumstances. On the other hand, evidence of late hours, in connection with other evidence, has been held in some cases to be a sufficiently suspicious circumstance. *DeMund v. State,* 166 N. W. 328 (Wisc.). Cf. *State v. Kvenmoen,* 232 N. W. 475 (N. D.).

Counsel for the appellant asked each of his witnesses, Wolfe and Immerwahr, the direct question whether he had had intercourse with the prosecuting witness and obtained a negative answer in each case. If we assume without deciding that proof of parking would permit an inference of sexual intercourse, we think the appellant effectually negatived, by his own witnesses, the fact he was trying to establish by inference. There was no claim of surprise, that the witnesses were hostile, or that they had made any prior inconsistent statements, hence the general rule that a party may not impeach his own witness, rather than the exception, would seem to apply. *Bruce v. State,* 218 Md. 87, 94; *Proctor Electric Co. v. Zink,* 217 Md. 22, 32. It is true that in *Zink* it was pointed out that a jury may disbelieve and disregard the testimony of a witness even though it be uncontradicted and unimpeached, and that one who produces a witness may prove the truth of material facts by other competent evidence. But to argue that merely because the witnesses may have parked with the prosecuting witness, their positive testimony that they had no sexual relations was unworthy of belief, would seem to fall into the category of improper impeachment. Hence the failure to allow the questions as to parking would not add up to reversible error.

While not directly in point, the cases arising under the so-called rule of *res ipsa loquitur* may be cited as somewhat analogous. It has been repeatedly held that where a plaintiff disproves by his own witnesses the inference of negligence he seeks to draw, he cannot rely upon the inference to establish a *prima facie* case. Cf. *Hickory Transfer Co. v. Nezbed,* 202 Md. 253, 263, and *Nalee, Inc. v. Jacobs,* 228 Md. 525, 532.

*Judgment affirmed, with costs.*

104

PRESCOTT, J., filed the following concurring opinion.

I agree with the result of Judge Henderson's opinion, but reach the same by slightly different reasoning. The Court is unanimous on the questions relating to the *voir dire* examination of the talesmen.

However, I agree with Chief Judge Brune and Judges Horney and Marbury that the trial judge unduly restricted and limited the cross-examination of the prosecuting witness by defendant's counsel and also the examination of the defendant's witnesses, Wolfe and Immerwahr, but feel that, under the peculiar circumstances of the case, neither was prejudicial. It should be remembered that defendant's counsel in his cross-examination of the prosecuting witness and in his examination of Wolfe and Immerwahr was seeking to have the jury draw an inference that she had had sexual relations with Wolfe or Immerwahr, or both (*not with anyone else*). After he offered Wolfe and Immerwahr as his own witnesses and asked them whether either had had sexual relations with her and each answered "No," he negatived the very facts he first sought to establish by inference. By this proof, he rendered the court's error in limiting his cross-examination of the prosecuting witness and the examination of his witnesses harmless. Obviously a party in a lawsuit cannot ask the triers of fact to *infer* that a fact occurred which the party *proves* did not. If appellant's counsel desired to reserve his objections for appellate review, he should have rested upon his objections and proffers and not have asked Wolfe or Immerwahr whether they had had sexual relations with the prosecuting witness.

As I read Judge Henderson's opinion (which, of course, is not a majority opinion), where it quotes excerpts from *Seibert v. State,* 133 Md. 309, 105 A. 161, and deals with permissible testimony in bastardy proceedings, it seems to place the quotes out of context, and it, too, would unduly restrict the testimony that the authorities say can be offered by a defendant in a case of this nature. The incident concerning the man who had "his hands up her [the prosecuting witness'] clothes feeling her legs" occurred more than a year before the birth of the child. There were four persons present at the time of

the other incident cited where the prosecuting witness was sitting on a man's lap in a "caressing" manner. The Court simply held that the jury would not be entitled "to infer" sexual relations from these facts alone.

The law seems to be properly and adequately stated in the following excerpts from the opinion in *Seibert,* the case cited by Judge Henderson:

> " 'Evidence is admissible to show that the mother had sexual intercourse with other men at about the time the child was begotten, and the mother may be interrogated on this point, but evidence tending to show that she had illicit connection with other men, and interrogatories made with a view to elicit that fact from her must be confined to a period when in the course of nature it would have been possible for the child to be the result of such intercourse.' "

* * *

> " 'Evidence that plaintiff kept company with other men at the time when the child might have been begotten is not competent unless offered to show sexual connection with such men. It is not necessary, however, in order to make such evidence competent, that defendant should undertake to adduce positive evidence of complainant's having had illicit connection with other men. He has a right to pursue any line of investigation that is directed to developing conduct on her part that may even remotely suggest such relation. Consequently association with other men under suspicious circumstances near the period of conception should be allowed to be considered by the jury. But evidence of such association not within the period of gestation is immaterial, except as bearing upon the nature of their relationship.' "

> "Such evidence may sometimes be very material— especially when the traverser denies the paternity of the child and when he denies that he had ever had sexual intercourse with the prosecuting witness, as this traverser did—but it is of a dangerous character un-

less it is carefully guarded. It may lead to the investigation of collateral matters and take the jury away from the real issue to be determined by it."

MARBURY, J., filed the following dissenting opinion, in which BRUNE, C. J., and HORNEY, J., concurred.

While I agree with the majority that the lower court was correct in declining to propound the two questions to the panel of prospective jurors, I am of the opinion that the trial judge's rulings on proffers of evidence under the circumstances of this case amounted to a denial of a fair and impartial trial of the appellant Twining.

Appellant complained that the trial judge refused to allow him to cross-examine the prosecutrix with respect to her association with Wolfe and Immerwahr. He further complained that he was not permitted to ask Wolfe and Immerwahr, his own witnesses, questions concerning their associations, respectively, with her during the period of possible conception.

Dr. Sani Okutman, a general practitioner with considerable experience in such cases, delivered the baby. He testified at the second trial, as well as at a former trial where the jury was unable to agree upon a verdict, that conception was at least forty weeks before delivery. Dr. Howard E. Hall, called by the State, testified that in his experience first pregnancies, such as this, often run a little longer than nine months. Thus counting back from July 4, 1962, forty weeks, the conception could have taken place in late September, one of the two crucial months when the prosecuting witness was associating with men other than the accused.

The permissible scope of the appellant's cross-examination of the prosecuting witness was first argued extensively out of the presence of the jury. Defense counsel's proffers as to all three of these witnesses were made in the presence of the jury. In each instance when there was a protracted discussion of the court's rulings the jury was admonished to disregard the colloquy.

In counsel's attempted cross-examination of the prosecutrix the record discloses the following colloquy:

"Court: You may ask this witness whether or not she had sexual relations with any other man within one month prior to October 31st or within a month subsequent to October 31st and the Court will permit that, but beyond that it will not go.

"Mr. Fradkin: You will not permit me to ask her anything [except] whether she had sexual relations?

"Court: Yes sir, sexual relations.

\* \* \*

"Mr. Fradkin: If you limit me, I can only take exception.

"Court: You can take an exception or any number of them.

"Mr. Fradkin: I have no other choice, that I can take but under cross examination it was during this period that you talk [of] and a month prior to the time that she could have conceived that any line of inquiry directed to her conduct during that month.

"Court: Illicit relations alone.

"Mr. Fradkin: Well leading to illicit relations, Your Honor closed the door because you say to me I can ask her but one question. I can say to her, did you have illicit relations or did you have sexual relations that one month and she says 'no' and then your Honor says the door is closed and I can ask no further questions.

"Court: That's right.

"Mr. Fradkin: \* \* \* Would your Honor say that if a girl, prosecuting witness, went out in a car with a man during an evening and spent the evening in his car alone that this is not evidence that a Jury might consider of an illicit relationship despite the fact that she denies it.　.

"Court: I do so hold.

"Mr. Fradkin: Then I have to go along with the Court's ruling and except to it."

Unquestionably the controlling principles of law are to be found in *Seibert v. State,* 133 Md. 309, 105 Atl. 161. How-

ever, I think that case is distinguishable on the facts. First, many of the questions which the appellant had not been allowed to ask the witnesses concerned the prosecuting witness's association with men other than the appellant which occurred outside the period of possible conception. They were clearly immaterial and too remote and were quite properly rejected on that basis. Second, I think the proffer here goes much further than the one considered in *Seibert*.

Counsel told the court that if permitted he would show, in cross examining the prosecuting witness, that she had the opportunity of having intercourse with Wolfe and Immerwahr. He made a proffer to the court to show that the prosecutrix had dated Wolfe, took a ring from him, went with him to dances and drive-in theaters and parked in a car with him, all within the time she could have conceived. As to Immerwahr, counsel for the appellant made a proffer to prove that the prosecutrix went out with him four or five times, went with him to drag races and a drive-in restaurant, and parked in a car with him, all within the time she could have conceived the child. Both of these proffers, as I have said, were in the presence of the jury who were warned to disregard the entire colloquies. I must assume they heeded the court's admonitions.

What the trial court was in effect requiring was direct proof that the prosecutrix had illicit relations with either or both of these other men. It seems to me that this asks too much of a defendant in a bastardy case. I think a fair analogy can be drawn to the proof of adultery required in divorce actions. Adultery may be inferred from circumstances under which the inference is the only plain, natural or logical deduction to be drawn. In such an inquiry the two most important facts to be considered are, first, whether there was a disposition to commit adultery, and, second, whether there was an opportunity, for, if the two concur, ordinarily it will be inferred that adultery was committed. *Swoyer v. Swoyer,* 157 Md. 18, 31, 145 Atl. 190. Other than by means of eyewitnesses or the admission of the participants in bastardy cases, circumstantial evidence appears to be the only means by which the accused can prove the commission of the act with the prosecutrix by one other than himself.

In *State v. Kvenmoen,* 232 N. W. 475 (N. D.), the defendant offered to prove on cross examination of the prosecuting witness (1) that she was at a house party alone with three men other than the defendant until the early morning hours; (2) that she went out with A in an automobile from 8:30 p.m. until 1:30 a.m.; and (3) other evidence of opportunity for the commission of sexual relations. The trial court sustained the State's objections that it was not proper cross-examination unless the defendant brought in the persons who would admit to these facts. The prosecuting witness, in addition, denied having relations with any others during the crucial months.

On appeal, the Supreme Court of North Dakota reversed, stating that in view of the conflict in the testimony as to the paternity, the defendant had the right to prove, if he could, that on or about the time set by the complaining witness as the date of intercourse, she had been in the company of other men frequently, alone, and at unusually late hours. The Court stated at page 477:

> "The trial court seemed to be under the impression that it was not sufficient to show this opportunity only, but it was necessary to prove that the other men had intercourse with her. This was correct in the main, but did not require confession or ocular evidence. It could be proved by circumstances, and the jury had the right to know these things. The court stated that it would permit the testimony if these men would come forward and admit they had intercourse with her. This is too narrow an interpretation of the rule."

In *I. v. D.,* 158 A. 2d 716 (N. J.), a case decided as recently as 1960 by the Superior Court of New Jersey, Appellate Division, the prosecuting witness testified on direct examination that she never had sexual intercourse with any person other than the defendant at any time. On two occasions the trial court sustained objections to inquiries, not as strong as those in the instant case, by the defendant on cross examination concerning the prosecutrix's association with other men during the crucial time period. The defendant was the appellee on appeal and made no point of contesting these rulings. Neverthe-

110

less, the Court, in reversing the trial court, said at page 721-722:

"We are, however, reluctant to visit the defendant with paternity of a child where it is possible that legal evidence he was foreclosed from developing on cross-examination might have been weighty enough to change the preponderance of the evidence as to his responsibility. The interests of justice require that the case be remanded to the County Court for the continuance of plaintiff's cross-examination in the respects noted above, and for the taking of such additional proofs as either of the parties wishes to adduce concerning plaintiff's other male associations, or the absence thereof, during the period when the child could have been conceived."

I think that intercourse can as well be proven by circumstantial evidence as by direct evidence. It is true that some of the preliminary questions were, if isolated, not directed to proving illicit relations. As I read the record, however, appellant's counsel was developing a pattern, a "line of investigation" leading to the proof. The trial court might have allowed the questions subject to being stricken if counsel failed to establish what he proffered. But I think the judge, during the trial, prejudiced the appellant's case by limiting the cross-examination of the prosecutrix with respect to her association with others to any question other than the devastating final one '(whether she had sexual relations with the named parties) which he in desperation did ask. Certainly counsel should have been allowed to ask the prosecutrix whether she had parked in a car with the other men. It can not be said that parking in a car late at night is not a suspicious circumstance, when in fact the prosecutrix herself claimed that the child was conceived in appellant's parked car. Certainly the jury should have been allowed to consider such evidence from which it could draw an inference of an illicit relationship despite the fact that she denied it.

I agree that a different principle is involved with respect to the proffers made to the court by appellant's counsel when he

was examining his own witnesses, Wolfe and Immerwahr. The trial court again ruled that the only inquiry that would be allowed with respect to his association with the prosecutrix would be whether they had sexual relations with her. I have already indicated that this was too limited a view and that counsel should have been permitted to make further inquiry. However, the direct question was asked each of these witnesses and each denied having had intercourse with the prosecutrix. The majority is correct I think in stating that since no effort was made by the appellant to show his witnesses were hostile, no surprise was claimed, and no prior inconsistent statement shown, the appellant properly could not have impeached the witnesses, and therefore was required by the usual rules of evidence to vouch for their testimony.

Clearly the legal questions involving the scope of the proffers made by defense counsel during the trial should have been argued and decided out of the presence of the jury. It is impossible to assess the impression left in the jurors' minds by the colloquies. At one point the trial court said:

> "Well, Gentlemen of the Jury, pay no attention to any of these questions which relate to whether or not this girl knows somebody. She may know some member of the jury but that does not mean that she has had sexual relations with them. Now the question here is, whether or not she had sexual relations with anyone other than the defendant which would have produced this conception."

This admonition may have misled the jury and could have been prejudicial to the defendant at this point in the trial.

Defense counsel was faced with a Hobson's choice. If he did not ask the one question the court repeatedly stated was the only one allowed, he might have left the impression with the jury that there was no merit at all to this claim so difficult to prove by direct testimony. If he did ask the question and got answers denying sexual relations (for to have admitted relations would virtually destroy the prosecutrix's case and could have incriminated appellant's own witnesses) he ran the risk of having damaging uncontradicted evidence before the triers of fact.

I wish to be understood as agreeing that the admonition stated in the *Seibert* case, *supra,* that the defendant may not introduce testimony merely to reflect upon the character of the prosecutrix must be adhered to. I would leave to the sound discretion of the trial judge in each case what questions are proper to show that the prosecutrix had sexual relations with others than the defendant, and which are mere innuendos and insinuations that the defendant knows he can never prove but which are offered to besmirch the character of the mother.

In a criminal prosecution such as this where the State's case must be made out almost entirely upon the testimony of the complaining witness (whose motives may be questionable) and which is usually predicated solely upon circumstantial proof, I can not vote to affirm the conviction of a defendant of the crime of bastardy where a reading of the entire record leaves me, as it does here, convinced that he was not given a fair and impartial trial. I think that the trial judge went beyond the proper exercise of his discretion and unduly restricted the appellant's counsel in pursuing the interrogation to show conduct on the part of the prosecutrix suggesting a sexual relation with other men within the period of possible conception. I would reverse and remand for a new trial.

Chief Judge Brune and Judge Horney authorize me to say they concur in the views herein expressed.