SUSAN HOLMES *v.* WILLIAM MCLEAN

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 2-48062

Argued December 16, 1968—decided March 7, 1969

*Donald C. Cousins,* of Bridgeport, for the appellant (plaintiff).

*Robert K. Lesser,* of Bridgeport, for the appellee (defendant).

DEARINGTON, J. The plaintiff brought this action under § 52-435a of the General Statutes, alleging she gave birth to a child on September 25, 1966, who was begotten about December, 1965, and that the defendant was the father of the child. After a trial to the jury a verdict was returned for the defendant and, judgment having been rendered thereon, the plaintiff appealed. At the conclusion of the evidence the plaintiff moved for a directed verdict, which motion was denied. After the verdict had been returned, the plaintiff moved to set it aside, but the motion was denied. The plaintiff further moved for judgment notwithstanding the verdict, and this motion was also denied. In her appeal from the judgment on the verdict, she assigns error in the denial of her motions and in certain rulings on evidence.

In reviewing the court's action, we first consider whether on the evidence, a directed verdict for the plaintiff would have been proper. If that question requires an affirmative answer we then turn to the question whether error was committed in refusing to render judgment for the plaintiff notwithstanding

the verdict. *Hemmings* v. *Weinstein,* 151 Conn. 502, 503. A motion for a judgment notwithstanding the verdict is, in part, action on the motion for a directed verdict which has been postponed. *Robinson* v. *Southern New England Telephone Co.,* 140 Conn. 414, 421. "In deciding the primary question, we give the evidence the most favorable construction in support of the verdict of which it is reasonably capable." *Hemmings* v. *Weinstein,* supra, 504. The verdict was reached on conflicting evidence and should stand unless the jury could not have reasonably reached the conclusion they did.

There was evidence from which the jury could have found that the plaintiff was single and had previously given birth to a child out of wedlock. The plaintiff testified she first met the defendant on Labor Day, 1962, and thereafter for a period of four or five months had relations with him. There was evidence, however, both oral and documentary, that during that period the defendant was a member of the armed forces stationed in Korea and that he did not return to the United States until June, 1963. During the fall of 1965 the defendant saw the plaintiff from time to time and had sexual relations with her. While there was evidence to the contrary, the jury could reasonably find that the last time such relations took place was on November 25, 1965. In January of 1966, the plaintiff learned she was pregnant. It was admitted that the defendant was informed of her condition and was accused by her of being the father. The baby was delivered September 25, 1966, and was a term size baby weighing seven pounds. The baby was exhibited to the jury, and they had the opportunity of viewing the child.

Much of the testimony came from a doctor, a specialist in the branch of surgery known as obstetrics, called by the plaintiff. He was asked what

the estimated date of the arrival of the baby would be if the baby was conceived on December 9, 1965 (the plaintiff claimed she also had relations with the defendant on December 9). The doctor answered that the average expected date would be September 2, 1966. Further evidence was elicited that variations from 280 to 300 days are accepted parturitions. There was further testimony that, if conception was assumed to have occurred December 9, the average expected date would be September 2, 1966; that the delivery on September 25 was three weeks after the average expected date; and that the average period of gestation is 280 days from the time of conception, whereas only 4 percent of births occur 300 or more days after conception.

The plaintiff claims that the court, in denying her motion, failed to apply the law as enunciated in *Mosher* v. *Bennett,* 108 Conn. 671, 674, wherein the court held that a prima facie case is made out by constancy of accusation, and such evidence "places upon the reputed father the burden of showing his innocence of the charge, and under our practice, he must do this by other evidence than his own." Constancy of accusation, however, is not an essential element of the proceedings. *Armstrong* v. *Watrous,* 138 Conn. 127, 129. The plaintiff had made out a prima facie case on the basis of constancy of accusation sufficient to shift the burden of proof to the defendant. *Palmieri* v. *Arnone,* 114 Conn. 711, 712. There being no appeal from the court's charge, it is to be presumed that the jury were correctly instructed on this subject. *Lisa* v. *Yale University,* 122 Conn. 646, 649.

The challenging issue raised by the plaintiff is whether there was sufficient evidence produced by the defendant to warrant the question of paternity going to the jury for their determination. In *Mosher*

v. *Bennett,* supra, 675, the court said "[t]his burden was not sustained by the defendant, who merely denied having sexual intercourse with the plaintiff, and in no way attempted to explain away the necessary conclusions drawn from the plaintiff's evidence." In the instant case the defendant did not merely deny sexual relations with the plaintiff but claimed his last relations with her prior to gestation occurred on November 25, and that the plaintiff later told him she was pregnant and the baby would arrive the following August. In attempting "to explain away the necessary conclusions drawn from the plaintiff's evidence," the defendant relied heavily upon the doctor's testimony as it related to gestation and confinement statistics. It is true that the doctor appeared for the plaintiff, but it is also true that a party is entitled to benefit by evidence favorable to him although adduced by a witness testifying for his adversary. *Rubano* v. *Koenen,* 152 Conn. 134, 135. "Witnesses belong to no particular party in any cause. They may be produced by one or the other, but in the final analysis they are called to give testimony for the purpose of a full and complete hearing of the case." *Gervais* v. *Foehrenbach,* 149 Conn. 461, 463. The jury could have found by simple arithmetical computation that if conception occurred on November 25, 1965, and the baby was born on September 25, 1966, a period of some 305 days had elapsed from the date of conception to the date of delivery. This result would place the period of gestation within the 4 percent range as classified by the doctor. There was no evidence of a prolonged or delayed period of gestation. See *State ex rel. Isham* v. *Mullally,* 15 Wis. 2d 249, and *Seibert* v. *State,* 133 Md. 309, for the evidential effect of an unusual period of gestation without there being evidence converting medical possibility into factual probability. The relevancy of the period of gesta-

tion and confinement as it related to sexual relations with the defendant became a matter of fact as the case developed. *Harty* v. *Malloy,* 67 Conn. 339, 344. Furthermore, the child whose paternity was in question was exhibited to the jury for the purpose of showing resemblance to the defendant. Such evidence "[i]n legal effect . . . may have been of ultimately controlling importance." *Higley* v. *Bostick,* 79 Conn. 97, 99; *Shailer* v. *Bullock,* 78 Conn. 65, 66. The court did not err in denying the motion for a directed verdict.

The plaintiff further assigns error in a ruling of the court on evidence. On cross-examination she was asked if she knew a man named "Lennie" and she answered, "No." She was then asked if she had gone to a Christmas party with "Lennie" and she answered, "No." Such questions and answers came in over the plaintiff's objection on the ground that such evidence was irrelevant and indicated no illicit relationship. Later, on direct examination, the defendant testified that he was in the plaintiff's home in December, 1965, and saw her leave for a Christmas party with a man named "Len." The plaintiff objected to the evidence but was overruled and took an exception. Such questioning produced no evidence sufficient to show or impute wrong even if the events occurred as testified to by the defendant. *Ferguson* v. *Smazer,* 151 Conn. 226, 233. It has been held that mere association between the prosecutrix and another man is irrelevant. *Seibert* v. *State,* 133 Md. 309; *State* v. *Patton,* 102 Mont. 51; *Brasseau* v. *Padlo,* 113 Vt. 300; 1 Jones, Evidence (5th Ed.) § 170; note, 104 A.L.R. 84, 96. In the instant case the defendant contends that such evidence was offered solely to test the plaintiff's credibility and was not offered for the purpose of laying a foundation which would lead to evidence of an illicit relationship with another man. The alleged untruthful-

ness of the plaintiff was not demonstrated during the previous cross-examination. The defendant was attempting to establish it by his contradictory testimony. "It is improper for counsel, after cross-examining a witness on a collateral matter, to call others to contradict him." *Hirsch* v. *Vegiard,* 137 Conn. 302, 304; *Johnson* v. *Charles William Palomba Co.,* 114 Conn. 108, 115. But "[o]nly fundamental and material errors which may work an injustice ought to disturb a judgment rendered in substantial accord with principles of law." *Wolfpit-Villa Crest Assn., Inc.* v. *Zoning Commission,* 144 Conn. 560, 565; Maltbie, Conn. App. Proc. § 23. The ruling of the court could not have reasonably affected the verdict. *Costello* v. *Costello,* 134 Conn. 536, 544. Evidence, however, is permissible if it shows relations with other men about the time of commencement of the period of gestation. 10 Am. Jur. 2d, Bastards, § 116; note, 104 A.L.R. 84, 85.

A calendar for the years 1965 and 1966 was received in evidence over the objection of the plaintiff. The court in admitting the calendar was of the opinion it would assist the members of the jury in refreshing their recollection. The plaintiff argued that the calendar was not the best evidence and that the matter of days of the week with days of the month should be left to the jury's recollection without the aid of a calendar. The plaintiff relies on *Beardsley* v. *Irving,* 81 Conn. 489. We do not construe *Beardsley* to hold that a calendar is inadmissible, since that question was not before the court. The case involved a contract, and the date of its execution became material. The court held (p. 491) that a trial court should take judicial notice of the days of the week with the days of the month and the instructions as given may have misled the jury and induced its verdict upon an erroneous theory that June 3, 1906, was not Sunday. We think

*State* v. *Morris,* 47 Conn. 179, 180, more nearly parallels the instant situation. In *Morris* the introduction of an almanac in evidence for the proper showing of the time the sun set on the day in question was held not to be error. An almanac has been defined as "a yearly calendar of days, weeks and months, with astronomical data . . . ." Webster, New World Dictionary (College Ed.). Professor Wigmore notes that an almanac has been explained to be admissible because it is founded on " 'certain and constant data.' " 6 Wigmore, Evidence (3d Ed.) § 1698; see 29 Am. Jur. 2d, Evidence, § 889. The court may take judicial knowledge of the days of the week with days of the month; *Beardsley* v. *Irving,* supra, 491; and the defendant could have brought such matters to the attention of the court and if necessary requested the court to instruct the jury on the subject, thus avoiding the introduction of a calendar. " 'The true conception of what is judicially known is that of something which is not, or rather need not, unless the tribunal wishes it, be the subject of either evidence or argument . . . .' " *State* v. *Main,* 69 Conn. 123, 136. It would thus appear that the introduction of evidence concerning matters of which the court may take judicial knowledge rests within the sound discretion of the court. See *Nichols* v. *Nichols,* 126 Conn. 614, 621. We cannot say the court abused its discretion in this respect. Maltbie, Conn. App. Proc. §§ 59, 312.

Perhaps it should be pointed out that we do not weigh the evidence appearing in the record. "It is obvious that we might thus credit certain evidence which the jury discredited, and fail to credit certain evidence which the jury believed to be true. The correct rule requires that the evidence be studied to determine whether there exists a reasonable basis therein for the conclusions which the jury reached, and the presumption should be indulged that evi-

dence which is inconsistent with these conclusions was rejected by the jury." *Canfield* v. *Sheketoff*, 104 Conn. 28, 34. Furthermore, "[i]t is the peculiar province of the trial court to observe the demeanor of the parties and their witnesses and to draw inferences therefrom as to the motives underlying their testimony and conduct." *Dadio* v. *Dadio,* 123 Conn. 88, 92. "In a case tried to the jury the same holds true of them as triers of the questions of fact." *State* v. *McLaughlin,* 126 Conn. 257, 264.

The question of gestation as it bore on paternity we have already held was an issue of fact for the jury together with the other evidence and reasonable inferences which might be drawn. The court did not err in refusing to set the verdict aside. Since the court correctly refused to set aside the verdict, it necessarily follows that it properly denied the motion for judgment notwithstanding the verdict. *Chanosky* v. *City Building Supply Co.,* 152 Conn. 642, 643.

There is no error.

In this opinion WISE and KINMONTH, Js., concurred.