Circuit Court for Prince George's County
Case No. CT12-1375X

IN THE COURT OF APPEALS

OF MARYLAND

No. 34

September Term, 2020

KOBINA EBO ABRUQUAH

v.

STATE OF MARYLAND

Barbera, C.J.,
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

PER CURIAM ORDER
Watts and Hotten, JJ., dissent.

Filed: October 27, 2020

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

| | | |
|---|---|---|
| **KOBINA EBO ABRUQUAH** | * | IN THE |
| | * | **COURT OF APPEALS** |
| | * | **OF MARYLAND** |
| **v.** | * | **COA-REG-0034-2020** |
| | * | **No. 34** |
| **STATE OF MARYLAND** | * | **September Term, 2020** |

## PER CURIAM ORDER

The Court having considered and granted the petition for a writ of certiorari in the above-captioned case, it is this 27th day of October, 2020,

ORDERED, by the Court of Appeals of Maryland, that the judgment of the Court of Special Appeals is vacated and the case is remanded to that Court with direction to remand the case to the Circuit Court for Prince George's County, pursuant to Maryland Rule 8-604(d)(1) without affirming or reversing the judgment of the Circuit Court, in order for the Circuit Court to consider whether, in light of this Court's decision in *Rochkind v. Stevenson*, No. 47 (September Term, 2019), the Circuit Court would reach a different conclusion concerning the admission of firearm and toolmark identification testimony based on the extensive hearing already conducted by the Circuit Court and such further proceedings, if any, that the Circuit Court deems necessary.   Costs to be paid by Petitioner.

/s/ Mary Ellen Barbera
Chief Judge

Circuit Court for Prince George's County
Case No. CT12-1375X

IN THE COURT OF APPEALS

OF MARYLAND

No. 34

September Term, 2020

_____

KOBINA EBO ABRUQUAH

v.

STATE OF MARYLAND

_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Dissenting Opinion by Watts, J.,
which Hotten, J., joins.

_____

Filed: October 27, 2020

Respectfully, I dissent from the Majority's decision to grant the petition for a writ of *certiorari*, vacate the Court of Special Appeals's judgment, and remand ("GVR") for reconsideration in light of <u>Stanley Rochkind v. Starlena Stevenson</u>, ___ Md. ___, ___ A.3d ___, No. 47, Sept. Term, 2019, 2020 WL 5085877, at *2 (Md. Aug. 28, 2020), <u>reconsideration denied</u> (Sept. 25, 2020).  In short, the GVR that the Majority orders is a waste of judicial resources because the circuit court has already conducted an extensive hearing over the course of six days on a motion *in limine* to exclude firearm or toolmark identification testimony filed by Petitioner, and the issue concerning the application of <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993), is not preserved for appellate review.  In this case, Petitioner's line of attack on the State's expert opinion was based on the contention that the method that the expert used to tie him to the murder—firearms toolmark examination—was no longer generally accepted, *i.e.*, failed to pass muster under the <u>Frye</u>-<u>Reed</u>[1] standard, and Petitioner questioned the reliability of the expert's methodology.  As the Court of Specials noted, the Circuit Court for Prince George's County "declin[ed] to hold a *Frye-Reed* hearing[,]" <u>Kobina Ebo Abruquah v. State</u>, No. 2176, Sept. Term, 2018, 2020 WL 261722, at *6 (Md. Ct. Spec. App. Jan. 17, 2020), but nonetheless conducted an extensive evidentiary hearing, <u>see</u> <u>id.</u> at *1-2.  During the hearing, the circuit court heard testimony from expert witnesses for Petitioner and the State and admitted documents concerning firearms examination into evidence.  Following the hearing, the circuit court issued a written opinion and order denying Petitioner's motion in

---

[1]<u>See</u> <u>Frye v. United States</u>, 293 F. 1013 (D.C. Cir. 1923); <u>Reed v. State</u>, 283 Md. 374, 391 A.2d 364 (1978).

part and granting it in part. In the opinion, the circuit court determined that toolmark examination remains generally accepted and reliable "under the *Frye-Reed* standard" and ruled that the expert could give an opinion as to whether bullets recovered from the victim could be attributed to a gun recovered from Petitioner, but could not state the opinion in terms of "absolute or scientific certainty[.]"[2]

In sum, both the circuit court and the Court of Special Appeals determined that the expert's testimony was admissible despite Petitioner's arguments otherwise. As a result of this Court's GVR, the circuit court, and potentially the Court of Special Appeals, will need to spend time and effort determining whether in light of this Court's decision in Rochkind it "would reach a different conclusion concerning the admission of firearm and toolmark identification testimony" and assessing entirely different grounds for possibly excluding the expert's testimony than those advanced initially in the circuit court, and ones that Petitioner never raised as a challenge—namely, whether firearms toolmark examination in general, or the expert's testimony about it in particular, satisfies Daubert. The question in this case that both the circuit court and the Court of Special Appeals addressed is whether toolmark examination is generally accepted in the relevant scientific community and whether the methodology used by the expert was reliable. It appears that nothing in the record in this case indicates that there would be any further basis for a Daubert challenge to the expert's testimony or to firearms toolmark examination. The GVR in this case would

---

[2]In the circuit court, Petitioner was convicted of first-degree murder and use of a handgun in the commission of a crime of violence and sentenced to life imprisonment plus twenty years.

require the circuit court, and/or the Court of Special Appeals, to readdress matters that have already been decided and to entertain a <u>Daubert</u> challenge that Petitioner never made, and that the record does not appear to give a basis for.

Any issue as to whether the circuit court was required to conduct a <u>Daubert</u> hearing, and/or engage in a <u>Daubert</u> analysis, is not preserved for appellate review because it was neither "raised in [n]or decided by the [circuit] court[,]"[3] Md. R. 8-131(a), and none of the three questions that Petitioner presented in the petition for a writ of *certiorari* pertain to <u>Daubert</u>. Instead, in a footnote in the petition for a writ of *certiorari*, Petitioner stated that, if this Court replaced the <u>Frye</u>-<u>Reed</u> standard with the <u>Daubert</u> standard in <u>Rochkind</u>, here, "it could evaluate the reliability of the methodology using *Daubert*." (Citing <u>Savage v. State</u>, 455 Md. 138, 175 n.1, 166 A.3d 183, 204 n.1 (2017) (Adkins, J., concurring)).

In <u>Rochkind</u>, 2020 WL 5085877, at \*18, this Court reasoned that its holding would apply to "any other cases that [were] pending on direct appeal when [the] opinion [was] filed, where the relevant question ha[d] been preserved for appellate review." (Cleaned up). This Court also stated: "In this context, the 'relevant question' is whether a trial court erred in admitting or excluding expert testimony under Maryland Rule 5-702 or *Frye-Reed*." <u>Rochkind</u>, 2020 WL 5085877, at \*18. As explained in the dissent:

---

[3]In his opening brief in the Court of Special Appeals, Petitioner mentioned <u>Daubert</u> by quoting the following language from <u>Sissoko v. State</u>, 236 Md. App. 676, 707-08, 182 A.3d 874, 892, <u>cert. denied</u>, 460 Md. 1, 188 A.3d 917 (2018): "[O]ur jurisprudence . . . has 'drift[ed]' toward the *Daubert* standard, in that the Court of Appeals 1) has used the *Frye-Reed* test 'not only to evaluate scientific methods, but also to assess scientific conclusions'; and 2) has applied the *Frye-Reed* test to established, as well as novel, scientific methods." (Quoting <u>Savage v. State</u>, 455 Md. 138, 187, 180-81, 166 A.3d 183, 212, 208-09 (2017) (Adkins, J., concurring)) (second alteration in original).

In Griffith v. Kentucky, 479 U.S. 314, 322 (1987), the Supreme Court held that not applying a newly announced constitutional rule to criminal cases pending on direct appeal is not consistent with basic principles of constitutional adjudication. In light of the Supreme Court's holding in Griffith, in some instances, this Court has given the application of new holdings to cases that were pending on appeal, where the new holding involved an issue of constitutional significance in criminal law. See, e.g., Hackney v. State, 459 Md. 108, 119, 184 A.3d 414, 421 (2018); State v. Daughtry, 419 Md. 35, 77 n.26, 18 A.3d 60, 85 n.26 (2011). Neither the holding in Griffith concerning the application of a newly announced constitutional rule nor the application of Griffith in Kazadi v. State, 467 Md. 1, 47, 223 A.3d 554, 581 (2020), and Daughtry would apply to a change of the evidentiary standard for use under Maryland Rule 5-702.

Rochkind, id. at *29 n.6 (Watts, J., dissenting).

Although the Majority determined otherwise—i.e., that its holding in Rochkind would apply to cases that were pending on appeal where the relevant question is preserved—this does not mean that the Majority is required to automatically apply its holding to any such case. The Majority should still exercise discretion in determining whether to GVR and, in my view, should not do so where the case involves a determination by the trial court after a thorough and lengthy hearing and an affirmance by the Court of Special Appeals, where no real issue exists with respect to the application of Daubert. More troubling, the GVR order issued by this Court vacates the judgment of the Court of Special Appeals and remands the case to the circuit court "without affirming or reversing the judgment of the Circuit Court," and tasks the circuit court with considering whether it would reach a different decision about the admissibility of the expert testimony in light of Daubert. This order provides no guidance to the circuit court as to what proceedings to conduct in order to determine whether it would now change its ruling. For example, is the circuit court to seek memoranda or input of any kind from the parties, conduct an

- 4 -

evidentiary or non-evidentiary hearing, or make a decision based on the existing record? And, after the circuit court determines the manner in which it will proceed, in what form should its determination be rendered, and will its determination be immediately appealable? Although the order may sound appropriate and thoughtful, it is an unusual order with no clear path to be followed. Aside from the obvious problems with the GVR order, because the issue concerning the applicability of <u>Daubert</u> was not raised at trial, and the circuit court has already conducted a lengthy and detailed hearing concerning the admissibility of the expert testimony at issue, the GVR that the Majority orders is unwarranted.

For the above reasons, respectfully, I dissent.

Judge Hotten authorizes me to state that she joins in this dissent.