Amit Kumar v. State of Maryland, No. 21, September Term, 2021

***VOIR DIRE* – APPLICABILITY OF HOLDING TO PENDING CASES – PRESERVATION FOR APPELLATE REVIEW –** Court of Appeals held that holding in Kazadi v. State, 467 Md. 1, 9, 47, 223 A.3d 554, 559, 581 (2020)—that, on request, during *voir dire*, trial court must ask whether prospective jurors are unwilling or unable to comply with jury instructions on certain fundamental principles and that Kazadi applied to any other cases pending on direct appeal when opinion was filed where relevant question was preserved for appellate review—applies to any case pending in trial or appellate court that had not become final on direct appeal when Court issued opinion in Kazadi and in which Kazadi issue was preserved for appellate review. In other words, holding in Kazadi applies to cases in which there had not yet been final disposition, regardless of whether notice of appeal had been filed at time opinion in Kazadi was issued, where issue had been preserved for appellate review. Court concluded that Petitioner was entitled to benefit of holding in Kazadi because there had not yet been final disposition in Petitioner's case when Court issued opinion in Kazadi and claim was preserved for appellate review.

Circuit Court for Baltimore City
Case No. 119053002
Argued: November 9, 2021

IN THE COURT OF APPEALS

OF MARYLAND

No. 21

September Term, 2021

_____

AMIT KUMAR

v.

STATE OF MARYLAND

_____

Getty, C.J.
McDonald
Watts
Hotten
Booth
Biran
Murphy, Joseph F., Jr. (Senior
Judge, Specially Assigned),

JJ.

_____

Opinion by Watts, J.
McDonald and Biran, JJ., concur.

_____

Filed: December 20, 2021

In Kazadi v. State, 467 Md. 1, 9, 223 A.3d 554, 559 (2020), we held "that, on request, during *voir dire*, a trial court must ask whether any prospective jurors are unwilling or unable to comply with the jury instructions on the fundamental principles of presumption of innocence, the State's burden of proof, and the defendant's right not to testify." In so holding, we overruled Twining v. State, 234 Md. 97, 100, 198 A.2d 291, 293 (1964), in which this Court had previously held that a trial court was not required to ask such *voir dire* questions. In Kazadi, we initially stated that our holding would apply to Kazadi and to other cases prospectively as of the date on which the opinion was issued. Subsequently, we replaced the language in Kazadi concerning its applicability to indicate that the holding would apply to the case and "any other cases that [were] pending on direct appeal when [the] opinion [was] filed, where the relevant question ha[d] been preserved for appellate review." Kazadi, 467 Md. at 47, 223 A.3d at 581 (citations omitted).

In this case, we must determine whether our holding in Kazadi applies to cases in which a defendant had not yet noted an appeal when the opinion was issued in Kazadi but had preserved a Kazadi issue at trial. We hold that Kazadi applies to such cases. In addition, we conclude that in this case the Kazadi issue was preserved for appellate review.

## BACKGROUND

### Charges and Verdict

The State, Respondent, charged Amit Kumar, Petitioner, with first- and second-degree murder of his wife, Ankita Verma, and openly carrying a dangerous weapon (a knife) with the intent to injure. In the Circuit Court for Baltimore City, a jury found Kumar guilty of first-degree murder and the weapon offense. Because the facts of the case are not

material to the issue before us, we will not provide a summary of the evidence. It suffices to say that after a trial by jury, Kumar was convicted of first-degree murder and openly carrying a dangerous weapon with the intent to injure after his wife had been found stabbed to death in their apartment. The issue in this case concerns the jury selection process.

### *Voir Dire*

On November 4, 2019, the circuit court conducted jury selection. Before *voir dire*, Kumar submitted to the circuit court in writing a list of seventeen proposed *voir dire* questions, which included the following Kazadi-type questions:

15. You must presume the defendant innocent of the charges now and throughout this trial unless and until, after you have seen and heard all of the evidence, the State convinces you of the defendant's guilt beyond a reasonable doubt. If you do not consider the defendant innocent now, or if you are not sure that you will require the State to convince you of the defendant's guilt beyond a reasonable doubt, please stand.

16. In a criminal case, like this one, each side may present arguments about the evidence, but the State has the only burden of proof. The defendant need not testify in his/her own behalf or present any evidence at all.

    a. Would you tend to believe or disbelieve the testimony of a witness called by the defense more than the testimony of a prosecution witness?

    b. Would you hold it against a defendant if [he/she/they] chooses not to testify or chose not to present any evidence?

(Brackets in original) (citation omitted).

While reviewing the parties' proposed *voir dire* questions, the circuit court asked: "Is there anything that is not included in the State's voir dire that the defendant specifically

requests?" Kumar's counsel responded by requesting that the circuit court ask several *voir dire* questions that he had proposed, including questions 15 and 16. The circuit court denied Kumar's counsel's request to ask proposed *voir dire* questions 15 and 16, which were the Kazadi questions. The following discussion occurred concerning *voir dire* questions 15 and 16, the Kazadi case (which was pending before us at the time), and Twining, 234 Md. 97, 198 A.2d 291 (which we overruled in Kazadi):

> [KUMAR'S COUNSEL]: I would ask that the Court propound . . . defense request for voir dire question number 15. There is currently a case, I think it's in the Court of Special Appeals[1] right now --
>
> THE COURT: Yeah, it's sitting there. Until they make a decision, the old law from about 50 years ago resumes. I'm with you, [defense counsel], but until the Court of Special Appeals makes that determination I'll have to deny your request as to presumption of innocence. And if I'm thinking ahead of you as to number -- well, part of number 16.
>
> [KUMAR'S COUNSEL]: And I would also ask that the Court include question 16 as well.
>
> THE COURT: I'll note the request.
>
> [KUMAR'S COUNSEL]: And, Judge, we would take exception --
>
> THE COURT: The exception is noted as to the Court's denial of the defendant's requested 15.
>
> [KUMAR'S COUNSEL]: And 16 as well.
>
> THE COURT: And exception is noted with regard to -- I haven't denied it yet. I'll deny the request as number 16. I will note again this issue is before the Court of Special Appeals, . . . but . . . that question at this moment is still improper, so I'll deny 16 also. I'll note your exception in that regard.

---

[1]Kumar's counsel mistakenly referred to the "Court of Special Appeals" and the circuit court repeated the reference twice during the discussion above. At the time that Kumar's trial began, oral argument had occurred in this Court in Kazadi and the case was awaiting the issuance of an opinion.

(Paragraph breaks omitted).

During the circuit court's review of the proposed *voir dire* questions, there were three instances in which Kumar's counsel excepted to the circuit court's refusal to ask a proposed *voir dire* question. In the first two instances, Kumar's counsel excepted to the circuit court's refusal to ask *voir dire* question 15 and to the circuit court's refusal to ask *voir dire* question 16—*i.e.*, the <u>Kazadi</u>-type *voir dire* questions. In the third instance, Kumar's counsel excepted to the circuit court's decision to ask an edited version of a proposed supplemental *voir dire* question—question B—which concerned whether jurors or their family members were trained or employed in the medical field.

In all other instances, Kumar's counsel did not except to the circuit court's refusal to ask proposed *voir dire* questions. Kumar's counsel did not except to the circuit court's refusal to ask proposed *voir dire* questions 10 (which pertained to whether jurors had law enforcement connections) and 17 (which was a catchall question). Similarly, Kumar's counsel did not except to the circuit court's decision to ask an edited version of proposed *voir dire* questions 9 (which pertained to whether jurors may have had biases against certain groups of people) and 12 (which pertained to whether the jurors had connections to certain advocacy organizations). In another instance, although the circuit court stated that it would note Kumar's counsel's exception to the court's refusal to ask a supplemental *voir*

*dire* question—question A (which pertained to alcohol and drug use)—Kumar's counsel did not actually state that he excepted to the circuit court's refusal to ask the question.[2]

After the exchange above in which the circuit court declined to ask *voir dire* questions 15 and 16 (the <u>Kazadi</u> questions) and indicated that Kumar's counsel's exceptions to the court's failure to ask the questions had been noted, the court asked the *voir dire* questions of the jury panel as a group. Upon completion of the group questions, before the court individually questioned prospective jurors who had responded affirmatively, the following exchange occurred:

> THE COURT: Anything further from the defense?
>
> [KUMAR'S COUNSEL]: I'll just ask the Court to note my continuing exception to the Court's refusal --
>
> THE COURT: Does your client want to be here?

The circuit court did not ask Kumar's counsel to elaborate concerning the "continuing exception to the Court's refusal[.]"

---

[2]The record reflects that Kumar's counsel submitted a request for two supplemental *voir dire* questions—questions A and B. The circuit court declined to ask supplemental question A concerning marijuana and alcohol use and after declining to ask the question, the court stated, without prompting by Kumar's counsel, that it would note Kumar's exception to its refusal to ask the question. Kumar's counsel did not advise the circuit court that an exception would be taken to the court's refusal to ask the question.

The record also reflects that the circuit court agreed, after rephrasing the question, to ask supplemental *voir dire* question B concerning whether jurors or their family members had been trained or employed in the medical field but stated: "I'm going to deny the request specifically as to your request to B, 1, 2 and 3, whoever comes up at sidebar voir dire, you can delve into that if you wish to, if they respond to your question B." As explained above, Kumar's counsel advised that he would take an exception and the circuit court noted the exception.

**Motion for a New Trial and Notice of Appeal**

On November 18, 2019, in the circuit court, Kumar filed a motion for a new trial, contending, among other things, that the circuit court erred in declining to ask proposed *voir dire* questions 15 and 16. In the motion for a new trial, Kumar's counsel raised various allegations of error but the only allegation raised concerning the circuit court's failure to ask proposed *voir dire* questions pertained to the court's failure to ask the <u>Kazadi</u> questions. On January 24, 2020, prior to the date of Kumar's sentencing, we issued our opinion in <u>Kazadi</u> and addressed the applicability of our holding as follows:

> Additionally, consistent with this Court's case law, although we provide Kazadi "with the benefit of the holding[] in this case, we determine that our holding[] shall apply prospectively as of the date on which this opinion is filed." <u>Pearson</u>, 437 Md. at 370, 86 A.3d at 1243. In other words, our holding exclusively applies to this case and future trials, and this opinion should not be construed as giving rise to any grounds for relief in cases in which *voir dire* occurred before today—*i.e.*, cases in which trial courts operated under the assumption that <u>Twining</u>, 234 Md. at 100, 198 A.2d at 293, remained good law.

(Alterations in original).

On February 21, 2020, the circuit court conducted the sentencing proceeding in Kumar's case at which it heard argument on and denied the motion for a new trial. The circuit court sentenced Kumar to life imprisonment for first-degree murder and a consecutive sentence of three years' imprisonment for the weapons offense. On March 2, 2020, we issued an Order replacing the language in <u>Kazadi</u> on the applicability of our holding with the following:

> Additionally, consistent with this Court's case law, we provide Kazadi with the benefit of the holding in this case, and we determine that our holding applies to this case and any other cases that are pending on direct appeal

when this opinion is filed, where the relevant question has been preserved for appellate review. See Hackney v. State, 459 Md. 108, 119, 184 A.3d 414, 421 (2018); State v. Daughtry, 419 Md. 35, 77 n.26, 18 A.3d 60, 85 n.26 (2011).

Kazadi, 467 Md. at 54, 223 A.3d at 586.

On March 20, 2020, in the circuit court, Kumar filed a notice of appeal.

**Opinion of the Court of Special Appeals**

On April 13, 2021, the Court of Special Appeals affirmed Kumar's conviction for first-degree murder and reversed for lack of sufficient evidence the conviction for openly carrying a dangerous weapon with the intent to injure. See Amit Kumar v. State, No. 300, Sept. Term, 2020, 2021 WL 1392142, at *7-8 (Md. Ct. Spec. App. Apr. 13, 2021).[3] The Court of Special Appeals held that the circuit court did not err or abuse its discretion in declining to ask proposed *voir dire* questions 15 and 16. See Kumar, 2021 WL 1392142, at *4. The Court of Special Appeals acknowledged that the State conceded that proposed *voir dire* questions 15 and 16 were Kazadi-type *voir dire* questions—*i.e.*, *voir dire* questions that must be asked on request under Kazadi. See Kumar, 2021 WL 1392142, at *3. The Court of Special Appeals noted, however, that it was not bound by concessions of law. See id. at *4. The Court of Special Appeals reasoned that because the revised opinion in Kazadi stated that its holding applied to "any [] cases that [were] pending on direct appeal" when the opinion was filed and Kumar had not filed a notice of appeal until after

---

[3]The Court of Special Appeals also held that the circuit court did not err in declining to instruct the jury on self-defense and did not abuse its discretion denying a motion to postpone sentencing. See Kumar, 2021 WL 1392142, at *6-7. Those issues, as well as the question of whether the evidence was sufficient to support Kumar's conviction for openly carrying a dangerous weapon with the intent to injure, are not before us.

the Kazadi opinion was issued, Kumar was not entitled to relief.  Kumar, 2021 WL 1392142, at *4.  The Court of Special Appeals determined that Twining, not Kazadi, applied and that, as such, it need not address the State's contention that Kumar's Kazadi claim was waived or unpreserved for appellate review.  See Kumar, 2021 WL 1392142, at *4.

## Petition for a Writ of *Certiorari*

On May 14, 2021, Kumar petitioned for a writ of *certiorari*, raising the following two issues:

> 1. Does the holding of *Kazadi* [] apply to all litigants who preserved the issue and whose cases were not yet final when the *Kazadi* opinion was issued, regardless of whether they had filed a notice of appeal by that date?
>
> 2. Did the Court of Special Appeals violate [Kumar]'s constitutional right to equal protection by applying different law to [Kumar]'s case as compared to other similarly situated litigants?

On July 9, 2021, we granted the petition.  See Kumar v. State, 475 Md. 3, 256 A.3d 270 (2021).

## DISCUSSION

The State agrees with Kumar that this Court's conclusion in Kazadi that its holding would apply "to this case and any other cases that [were] pending on direct appeal when [the] opinion [was] filed, where the relevant question has been preserved for appellate review[,]" Kazadi, 467 Md. at 47, 223 A.3d at 581 (citations omitted), includes "cases that were pending in the trial court when *Kazadi* was decided and had not yet become final on direct appeal."  (Footnote omitted).  Kumar points out that, because we indicated that the applicability of the holding in Kazadi was consistent with case law such as Hackney and

- 8 -

<u>Daughtry</u>, the holding applies to any case in which there had not yet been a final disposition[4] when the opinion in <u>Kazadi</u> was issued, regardless of whether the defendant had filed a notice of appeal at the time. In agreement, the State adds that our opinion in <u>Kazadi</u> and other case law indicate that, consistent with the United States Supreme Court's decision in <u>Griffith v. Kentucky</u>, 479 U.S. 314 (1987), <u>Kazadi</u> applies to all cases that were pending on direct review or not yet final where the issue is preserved for appellate review.

The parties are correct. In light of case law from the United States Supreme Court and this Court and considerations of fairness, our holding in <u>Kazadi</u> applies to any case that was pending in a trial or appellate court that had not become final on direct appeal when this Court issued the opinion in <u>Kazadi</u> and in which the <u>Kazadi</u> issue had been preserved for appellate review. In other words, our holding in <u>Kazadi</u> applies to cases in which there had not yet been a final disposition, regardless of whether a notice of appeal had been filed

---

[4]At various times, the parties use the term "final judgment" in discussing cases in which appellate proceedings have not concluded. Citing <u>Franklin v. State</u>, 470 Md. 154, 186, 235 A.3d 1, 19 (2020), Kumar states that the term "final judgment" refers to "when the judgment of conviction has been rendered, all appeals have been exhausted, and the time for a petition for certiorari has elapsed." In <u>Franklin</u>, <u>id.</u> at 186, 235 A.3d at 19, however, we stated that the term "'[f]inal disposition of the case' means the point where the judgment of conviction was rendered, the availability of (final) appeal exhausted, and the time for petition for certiorari had elapsed." (Cleaned up). In other words, the term "final disposition" means the point at which a defendant has exhausted the right to a direct appeal. On the other hand, "[a] final judgment is one that either determines and concludes the rights of the parties involved or denies a party the means to prosecute or defend his or her rights and interests in the subject matter of the proceeding"—*i.e.*, a "final judgment is one that puts a party out of court[.]" <u>Brown v. State</u>, 470 Md. 503, 549, 236 A.3d 488, 514 (2020) (cleaned up). For example, generally, "there is a final judgment for purposes of appeal in a criminal case when the sentence is announced or imposed." <u>Id.</u> at 550, 236 A.3d at 515 (citation omitted). In this case, to avoid confusion, when referring to the point at which the right to a direct appeal has been exhausted, we use the term "final disposition" instead of the term "final judgment."

at the time the opinion in Kazadi was issued, and in which the issue had been preserved for appellate review.

Because the Soule case, a case that involved a similar issue, provided the backdrop for our revised opinion in Kazadi, we will briefly discuss the history of the case in this Court. On March 20, 2019, Soule filed a petition for a writ of *certiorari* in which one of the questions presented was whether case law in which this Court had concluded that it was inappropriate for a trial court to ask *voir dire* questions concerning the presumption of innocence should be revisited. We placed Soule's petition on hold pending the disposition of Kazadi.[5]

On January 31, 2020, after the issuance of our opinion in Kazadi, Soule filed a supplement to his petition for a writ of *certiorari*, contending that Kazadi applied to all pending cases—*i.e.*, cases in which the right to direct appeal had not yet been exhausted at the time the Kazadi opinion was issued—where the issue is preserved for appellate review. Soule requested that we revise the opinion in Kazadi to indicate that the holding applied to cases in which the right to appeal had not been exhausted.[6] On March 2, 2020, citing Daughtry and Hackney, we issued the Order revising Kazadi to indicate that the holding applied to all cases "pending on direct appeal" at the time the opinion was issued and where

---

[5]On May 14, 2019, we had granted a petition for writ of *certiorari* filed by Kazadi through counsel. See Kazadi v. State, 463 Md. 637, 207 A.3d 1215 (2019).

[6]On February 3, 2020, although Soule was not a party to the case, Soule filed a line in Kazadi attaching the supplement. On February 5, 2020, Kazadi filed a motion to strike the line and the attachment, contending that Soule essentially sought reconsideration in Kazadi, which he lacked standing to do because he was not a party to the case. Ultimately, after replacing language in Kazadi concerning the applicability of the holding, we denied Kazadi's motion to strike as moot.

the issue was preserved for appellate review. Kazadi, 467 Md. at 54, 223 A.3d at 586.[7] As such, our revision of the language in Kazadi concerning the applicability of its holding occurred as a result of the supplement to the petition for a writ of *certiorari* filed in Soule.

In the supplement, Soule requested that we revise Kazadi because under Griffith, 479 U.S. 314, and our existing case law, Kazadi would apply to pending cases—*i.e.*, cases in which the right to direct appeal had not yet been exhausted—where the issue is preserved for appellate review. In Griffith, 479 U.S. at 322, the Supreme Court held that the "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication." Quoting Williams v. United States, 401 U.S. 667, 679 (1971) (Harlan, J., concurring), the Supreme Court explained that the nature of judicial review "precludes us from '[s]imply fishing one case from the stream of appellate review, using it as a vehicle for pronouncing new constitutional standards, and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule.'" Griffith, 479 U.S. at 323 (alteration in original). In various instances in Griffith, the Supreme Court used the terms "not yet final" and "pending on direct review" interchangeably in referring to the cases to which the new rule should apply.[8] Griffith, 479

---

[7]On the same date, we granted the petition in Soule and issued a *per curiam* order vacating the Court of Special Appeals's judgment and remanding the case to that Court with instructions to determine whether Kazadi applied. See Soule v. State, 467 Md. 689, 226 A.3d 234 (2020); Soule v. State, 467 Md. 432, 225 A.3d 415 (2020).

[8]In addition, citing United States v. Johnson, 457 U.S. 537 (1982), in Griffith, the Supreme Court observed that the Fourth Amendment ruling in Payton v. New York, 445 U.S. 573 (1980), barring police from making a warrantless, nonconsensual entry into a person's home to make a routine felony arrest, "applied retroactively to a case pending on direct appeal." Griffith, 479 U.S. at 321 n.7.

- 11 -

U.S. at 316, 323, 328. This language indicates that, where the term "pending on direct appeal" is used in Kazadi, the term indeed refers to cases that were not yet final—*i.e.*, cases in which there had not yet been final dispositions. That the replacement of the language in Kazadi was made in light of the Supreme Court's holding in Griffith demonstrates that our holding in Kazadi applies to all cases pending appeal or pending direct review, *i.e.*, cases in which there had not yet been a final disposition as opposed to only cases in which a notice of appeal had already been filed.[9]

In addition, in the order revising the applicability of the holding in Kazadi, we cited Hackney and Daughtry, stating that, "consistent with this Court's case law, . . . we determine that our holding applies to this case and any other cases that are pending on direct appeal when this opinion is filed[.]" Kazadi, 467 Md. at 54, 223 A.3d at 586. The use of the two cases indicates that the holding in Kazadi should have the same retroactive effect as the retroactive application discussed in Hackney and Daughtry. In Hackney, 459 Md. at 119, 132, 184 A.3d at 421, 429, we adopted the prison mailbox rule and because our holding was a new application of "constitutional provisions, statutes, or rules," we determined that Hackney was entitled to the benefit of the rule and "so too should any other

---

[9]In addition, after the order revising the holding in Kazadi was issued, the discussion of the Kazadi case in a recent dissenting opinion indicated that its holding involved an application of Griffith. See Rochkind v. Stevenson, 471 Md. 1, 67 n.6, 236 A.3d 630, 669 n.6 (2020) (Watts, J., dissenting); see also Abruquah v. State, 471 Md. 249, 253, 240 A.3d 1205, 1207 (2020) (Watts, J., dissenting) (quoting Rochkind, 471 Md. at 67 n.6, 236 A.3d at 669 n.6 (Watts, J., dissenting)). The observation in the dissent in Rochkind that Kazadi implemented the principle expressed in Griffith that newly announced constitutional rules apply to cases pending on direct appeal indicates that, consistent with Griffith, Kazadi applies to cases in which there had not yet been a final disposition when the opinion was issued, where the issue is preserved for appellate review.

similarly situated prisoner whose case is pending receive the benefit of the rule we adopt here."  In reaching this conclusion, among other cases, we cited <u>Griffith</u>.  <u>See</u> <u>Hackney</u>, 459 Md. at 119, 184 A.3d at 421.  Similarly, in <u>Daughtry</u>, 419 Md. at 77 n.26, 18 A.3d at 85 n.26, we indicated that application of a new rule would apply to "all other pending cases where the relevant question has been preserved for appellate review."  (Cleaned up).  Consistent with <u>Hackney</u> and <u>Daughtry</u>, our holding in <u>Kazadi</u> applies (assuming that the issue is preserved for appellate review) to pending cases—*i.e.*, cases in which there had not yet been a final disposition when we issued the opinion in <u>Kazadi</u>.

Griffith, <u>Hackney</u>, and <u>Daughtry</u> are not the only cases that reinforce this principle. In <u>Polakoff v. Turner</u>, 385 Md. 467, 487-88, 869 A.2d 837, 850 (2005), we observed that "a new interpretation of a constitutional provision, statute, or rule has included the case before us and all other pending cases where the relevant question has been preserved for appellate review."  (Cleaned up).  By contrast, "[g]enerally, judicially-initiated changes to the common law apply prospectively, that is, they apply in the case before us and all similar cases moving forward."  <u>State v. Jones</u>, 466 Md. 142, 164, 216 A.3d 907, 920 (2019) (citations omitted).  Our holding in <u>Kazadi</u> is subject to the principle set forth in <u>Polakoff</u> because the holding was based on a constitutional provision and fundamental principles, not the common law.[10]  Because <u>Kazadi</u> involved an interpretation of a constitutional

_____

[10]As we observed in <u>Kazadi</u>, 467 Md. at 45, 223 A.3d at 580, the right not to testify emanates directly from a constitutional provision—namely, "[t]he Fifth Amendment to the Constitution of the United States, which was ratified in 1791[ and] expressly enshrines the right not to testify" in a criminal case.  In <u>Kazadi</u>, the only instance in which we referred to the common law was when we pointed out that, "[a]lthough the Constitution does not

provision and fundamental principles, under Polakoff, its holding applies to "all other pending cases where the relevant question has been preserved for appellate review." Polakoff, 385 Md. at 487-88, 869 A.2d at 850 (cleaned up).

Further, considerations of fairness warrant our present holding. We agree with the State that concluding otherwise would "create[] a strange 'doughnut hole' in *Kazadi*'s application" in that the holding in Kazadi would apply to future cases and cases where appeals were actually pending when we issued the opinion in Kazadi, but not to cases falling between those two categories—*i.e.*, ones in which defendants had been tried but not yet noted appeals when Kazadi was issued. We do not see any principled reason to deny relief under Kazadi to defendants simply because they noted appeals after the opinion was issued.

Having resolved the issue of the applicability of Kazadi, we turn to the outcome of this case. Kumar requests that we reverse and remand the case to the circuit court for a new trial. The State asks that we vacate the judgment of the Court of Special Appeals and remand the case to that Court for it to address the issue of preservation for appellate review as well as the "merits" of Kumar's Kazadi claim.

We decline the State's request. As we see it, the merits of Kumar's claim are the same as the issue that we have already considered concerning the applicability of the

---

explicitly refer to the burden of proof or the presumption of innocence, both of those principles existed under the common law at least since around the time of the country's founding." Id. at 45, 223 A.3d at 580 (citations omitted). As such, in Kazadi, the common law was mentioned only to explain that these fundamental principles arose from it centuries ago at the time of our country's founding.

holding in <u>Kazadi</u>. Although the question before us was phrased in terms of whether this is a case to which the holding in <u>Kazadi</u> would apply, it is the same question that forms the merits of Kumar's <u>Kazadi</u> claim. We have resolved the matter in accord with the position taken by both parties and concluded that the holding in <u>Kazadi</u> applies to all cases in which there was no final disposition at the time the <u>Kazadi</u> opinion was issued and in which the issue is preserved for appellate review—regardless of whether a notice of appeal had been filed in the case. The State has already acknowledged in the Court of Special Appeals that proposed *voir dire* questions 15 and 16 are <u>Kazadi</u>-type *voir dire* questions—*i.e.*, *voir dire* questions that must be asked on request under <u>Kazadi</u>. See <u>Kumar</u>, 2021 WL 1392142, at *3. So, if the issue is preserved, there is nothing left to decide with regard to the merits of Kumar's <u>Kazadi</u> claim.[11]

Although the Court of Special Appeals declined to address the issue of preservation, under Maryland Rule 8-131(b)(1), we have the discretion to consider an issue that was not decided by the Court of Special Appeals and not raised in a petition or cross-petition for a writ of *certiorari*.[12] In this case, based on the record of the jury selection process and to

---

[11]To the extent that the State asserts that the merits of Kumar's <u>Kazadi</u> claim are not before us because the first question presented in the petition for a writ of *certiorari* concerned only the applicability of <u>Kazadi</u> in general, not whether Kumar is entitled to relief under <u>Kazadi</u>, the State, in reality, does not contend that the merits of Kumar's claim are any different than the issue that we have already decided.

[12]We disagree with Kumar's contention that the State waived the issue of preservation by not filing a cross-petition for a writ of *certiorari*. Given that the Court of Special Appeals did not reach the issue, there was no determination on which the State could base a cross-petition.

That said, although Kumar argued on brief that the State waived the preservation issue by not filing a cross-petition, at oral argument, on rebuttal, in response to questions

avoid future unnecessary appellate proceedings, we believe it prudent to exercise our discretion to reach the preservation issue. To be sure, it may be a general practice where we reverse on an issue to remand a case to the Court of Special Appeals for it to address issues not previously decided if the undecided issues that were before that Court are not moot. While this may be a general practice, it is not an absolute requirement. We are not required to remand to the Court of Special Appeals for further proceedings in every single case in which an issue was not addressed.

We have the discretion to decide such an appellate issue and have exercised our discretion to do so in other cases, including <u>Matthews v. Amberwood Assocs. Ltd. P'ship, Inc.</u>, 351 Md. 544, 581, 719 A.2d 119, 137 (1998), in which we observed that, "on occasions, where . . . the issue can be disposed of quickly, we have, in the interests of judicial economy and expedition, deemed it appropriate to decide such an issue rather than remand the matter to the Court of Special Appeals for decision." (Cleaned up). In <u>Matthews</u>, <u>id.</u> at 580-81, 719 A.2d at 136-37, we addressed an issue concerning contributory negligence and assumption of risk that the Court of Special Appeals had not decided because it was "one of those occasions in which the issue [could] be disposed of quickly and easily" and because there was "no good reason to prolong appellate proceedings[.]" Likewise, in <u>Lizzi v. Wash. Metro. Area Transit Auth.</u>, 384 Md. 199, 206, 862 A.2d 1017, 1022 (2004), we addressed an issue concerning *res judicata* that the Court

raised by the Court during the State's presentation, Kumar's counsel agreed that the Court had the discretion to decide the issue, that the record contained everything the Court needed to understand the issue, and that the Court could address the issue and hold that Kumar's trial counsel's objection was preserved.

of Special Appeals had not decided "to avoid the expense and delay of another appeal"—*i.e.*, to refrain from remanding "to the Court of Special Appeals for it to determine the issue when it would, in all probability, end up back here." (Cleaned up). When addressing issues that the Court of Special Appeals had not decided, we have cited judicial economy or the desire to avoid a remand to that Court. See, e.g., Suburban Hosp., Inc. v. Kirson, 362 Md. 140, 177, 763 A.2d 185, 205 (2000); Bundy v. State, 334 Md. 131, 148, 638 A.2d 84, 93 (1994); Sergeant Co. v. Pickett, 285 Md. 186, 193, 401 A.2d 651, 655 (1979).

In this case, considerations of judicial economy and the desire to avoid unnecessary appellate litigation persuade us to address the issue of preservation, given that it is an issue that can be decided quickly and easily and that in all likelihood would wind up back in this Court after a determination on remand. In other words, we are cognizant that, if we were to remand to the Court of Special Appeals to address the issue, the non-prevailing party would likely file a petition for a writ of *certiorari*, resulting in even more appellate proceedings. We see no need to cause further appellate litigation in the case.

We have everything that we need to determine whether Kumar's Kazadi claim is preserved for appellate review. We have the parties' briefs in the Court of Special Appeals, in which the parties addressed the preservation issue; and we have the transcript of the entire jury selection process. We need only determine whether Kumar's exceptions were sufficient to preserve the Kazadi claim for appellate review. As the State acknowledged at oral argument in this Court, our holding in State v. Ablonczy, 474 Md. 149, ___, 253 A.3d 598, 600 (2021) disposed of the State's contention in the Court of Special Appeals that Kumar waived his Kazadi claim by accepting the jury as empaneled. As such, we need

only address the issue of preservation for appellate review, not waiver.

This case is distinguishable from State v. Miller, 475 Md. 263, ___, 256 A.3d 920, 944 (2021), a case cited by the State at oral argument, in which this Court remanded a case to the Court of Special Appeals for determination of an issue not decided by that Court. In Miller, our holding concerned the admissibility of evidence at a criminal trial, and we remanded the case to the Court of Special Appeals so that it could address an issue pertaining to sentencing. Here, the issue we decided concerns the applicability of our holding in Kazadi and we have already determined that Kazadi applies. The State asks us to remand the case to the Court of Special Appeals for it to address whether the Kazadi claim is preserved for appellate review. Because the two issues are interrelated and there is not a non-Kazadi-related issue for the Court of Special Appeals to address, the remand that the State requests would not be comparable to the one in Miller.

In addition, it is not necessary to remand the case to the Court of Special Appeals for that Court to consider the preservation issue in light of the disposition of Brigido Lopez-Villa v. State of Maryland, No. 22, Sept. Term, 2021 (Md.), in which we heard oral argument on December 2, 2021. Our disposition of the preservation issue in this case does not depend on the disposition of Lopez-Villa because the circumstances of the cases are very different. In Lopez-Villa, in the petition for a writ of *certiorari*, the question raised concerning the jury selection process is:

> Where Petitioner submitted a written request for said voir dire questions and the trial court "reviewed" the questions and ruled that it was "not inclined to ask" them "because the Court will instruct on those areas of law," did the Court of Special Appeals err in holding that Petitioner "failed to preserve his objection to the court's refusal to read his proposed voir dire questions,"

because he "failed to ask or tell the court that he objected to the failure to ask those specific questions," and because when, at the end of voir dire, the trial court inquired, "[d]id I miss any questions . . . what you previously objected to, which I will preserve for the record," counsel responded "no"?

(Alteration and ellipsis in original). The question presented in Lopez-Villa is a very fact-specific question. The question includes the circumstance that, when the trial court initially reviewed requested *voir dire* questions with counsel, trial counsel did not object when the court stated that it was not inclined to ask the Kazadi-type *voir dire* questions. The question also includes the circumstance that, after the trial court asked the group *voir dire* questions, counsel responded "no" to an inquiry from the court concerning whether any questions had been missed. The circumstances of this case are nothing like those of Lopez-Villa. Here, during the circuit court's review of the proposed *voir dire* questions, Kumar's counsel expressly excepted to the court's refusal to ask both of the Kazadi questions. Further, after the circuit court asked the *voir dire* questions of the jury panel, when the court asked whether there was anything further, Kumar's counsel asked the court to note a continuing exception. This case does not involve considering whether submitting a written request for Kazadi-type *voir dire* questions is sufficient to preserve the issue for appellate review where there is an alleged failure to object at all to a trial court not asking the questions. Rather, the case involves the limited question of the sufficiency of Kumar's counsel noting a continuing exception after the group *voir dire* questions. There is no need for us to return this case to the Court of Special Appeals to await the outcome of Lopez-Villa and decide the preservation issue.

Having decided to exercise our discretion to address the issue of preservation, we

conclude that Kumar preserved the Kazadi claim for appellate review. At oral argument in this Court and on brief in the Court of Special Appeals, the State contended that the issue was not preserved because, when excepting after the group *voir dire* questions, Kumar's counsel did not identify the specific unasked proposed *voir dire* questions to which he excepted. "Maryland Rule 4-323(c) delineates the method of objecting to the adverse ruling of a trial court on a proposed *voir dire* question[.]" Ablonczy, 474 Md. at ___, 253 A.3d at 603. Under Maryland Rule 4-323(c), for purposes of review of a ruling or order of a trial court other than one admitting evidence, "it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court."

In this case, Kumar preserved the Kazadi claim for appellate review in accordance with Maryland Rule 4-323(c) by making known his objection to the circuit court's failure to ask the Kazadi-type *voir dire* questions. Kumar requested the unasked Kazadi *voir dire* questions at issue at least twice before the jury panel was questioned as a group—first in writing and then orally during the process in which the circuit court reviewed with counsel the *voir dire* questions that would be asked. Prior to the circuit court asking the proposed *voir dire* questions, Kumar's counsel specifically advised the court that he took exception to the court's refusal to ask questions 15 and 16—the Kazadi-type *voir dire* questions— and the circuit court explicitly stated that each exception was noted.

When given the opportunity to do so after the group *voir dire* questions were asked, Kumar excepted to the circuit court's refusal to ask proposed *voir dire* questions. Specifically, after asking *voir dire* questions of the jury panel but before individually

questioning prospective jurors, the circuit court asked whether there was "[a]nything further from the defense[,]" and Kumar's counsel responded: "I'll just ask the Court to note my continuing exception to the Court's refusal --" The next line of the transcript indicates that the circuit court asked Kumar's counsel whether Kumar wanted to be present. The State observed at oral argument that it is unclear whether Kumar's counsel's voice trailed off after saying the word "refusal" or whether the circuit court interrupted him at the time.

What is clear is that when Kumar's counsel asked the circuit court to note his "continuing exception to its refusal" he was referring to the court's refusal to ask proposed *voir dire* questions that he had requested. Before this Court, at oral argument, the State acknowledged that Kumar's counsel's continuing exception referred to the circuit court's refusal to ask *voir dire* questions but contended that the exception was insufficient to preserve the Kazadi issue because Kumar's counsel did not identify the particular *voir dire* question or questions to which he was referring. By using the term "continuing exception[,]" however, Kumar's counsel indicated that he was re-raising a matter that he had already raised. Throughout *voir dire*, the only instances in which Kumar's counsel specifically excepted to the circuit court's failure to ask *voir dire* questions were the court's failure to ask *voir dire* questions 15 and 16—the Kazadi questions—and later the court's refusal to ask in its entirety supplemental question B pertaining to prospective jurors' and their family's potential training or employment in the medical profession.

Under the circumstances of this case, the only reasonable interpretation of Kumar's counsel's reference to his "continuing exception to the Court's refusal" is that he was referring to the circuit court's refusal to ask the proposed Kazadi *voir dire* questions—*voir*

*dire* questions 15 and 16. During the discussion between the circuit court and Kumar's counsel at the time that the court declined to ask *voir dire* questions 15 and 16, both the circuit court and Kumar's counsel acknowledged that there was a case pending on appeal that could potentially change the law concerning whether the questions should be asked. Given Kumar's counsel's discussion with the circuit court concerning the case pending in the "Court of Special Appeals" and the circuit court's observation that, until the Court made a decision, the "old law from about 50 years ago" would apply, it is difficult to conceive that Kumar's counsel's noting of a continuing exception could have been understood as anything other than applying to the circuit court's refusal to ask the Kazadi-type *voir dire* questions.

Without deciding the issue of whether to preserve a Kazadi claim it is required that an exception be made or renewed after *voir dire* questions are asked of a jury panel but before individual questioning of prospective jurors,[13] we conclude that Kumar's counsel's continuing exception to the circuit court's refusal to ask the proposed *voir dire* questions complied with Maryland Rule 4-323(c) because it made "known to the court the action that the party desire[d] the court to take or the objection to the action of the court." To agree with the State that Kumar's Kazadi claim was unpreserved for appellate review, we would need to determine that Kumar's counsel's noting of a continuing exception after the group questioning was entirely meaningless because it was not specific as to any particular

---

[13]We do not decide the issue concerning the potential effect of an alleged failure to make or renew an objection after a trial court conducts group *voir dire* of a jury panel because that issue involves a different set of circumstances and is not before the Court in this case.

unasked proposed *voir dire* question—even though he had excepted in only three instances to the circuit court's refusal to ask *voir dire* questions and two of the exceptions involved the Kazadi-type questions. Or, we would need to conclude that, in noting a continuing exception, Kumar's counsel was referring only to the circuit court's refusal to ask in its entirety supplemental question B concerning whether jurors or their family members had any connection to the field of medicine or to some other unasked *voir dire* question to which he had not previously expressly excepted, and not to the circuit court's refusal to ask proposed *voir dire* questions 15 and 16 which concerned fundamental rights and involved an issue that both the circuit court and Kumar's counsel had discussed as pending in a case on appeal.[14]

This case is different from cases in which the Court of Special Appeals has held that defendants failed to preserve for appellate review issues as to unasked proposed *voir dire* questions where, after asking *voir dire* questions, trial courts either asked whether there was anything to add or asked whether there were any comments or objections, and the defendants' counsel either said nothing or responded in the negative. See, e.g., Brice v. State, 225 Md. App. 666, 679, 126 A.3d 246, 254 (2015), cert. denied, 447 Md. 298, 135 A.3d 416 (2016); Gilmer v. State, 161 Md. App. 21, 32-33, 866 A.2d 918, 925, vacated in

---

[14]In addition to preserving an issue for appellate review, one of the purposes of noting an exception or making an objection is to give a trial court the opportunity to correct an alleged mistake. See Taylor v. State, 473 Md. 205, 227, 249 A.3d 810, 823 (2021). Given the discussion between the circuit court and Kumar's counsel when the court reviewed *voir dire* questions 15 and 16, it is difficult to conceive that the circuit court would not have understood Kumar's counsel's noting of a continuing exception to apply to the court's refusal to ask the Kazadi-type *voir dire* questions.

part on other grounds, 389 Md. 656, 887 A.2d 549 (2005).  By contrast, here, when given the opportunity, Kumar's counsel noted a continuing exception to the circuit court's refusal to ask proposed *voir dire* questions.  This is not a case in which a defendant allegedly abandoned a request for an unasked proposed *voir dire* question by failing, when given the opportunity, to make or renew an objection to the trial court's failure to ask the question.

In this case, in addition to excepting to the circuit court's refusal to include the Kazadi questions in the group *voir dire* questions and noting a continuing exception after the group *voir dire* occurred, in the motion for a new trial, Kumar asserted that the circuit court erred in refusing to ask the Kazadi-type *voir dire* questions.  At the sentencing proceeding, the circuit court heard argument on the motion, and neither the State nor the court contended, or even mentioned the notion, that Kumar's Kazadi claim was unpreserved.  To the contrary, the arguments made by the parties and the circuit court's ruling as to the Kazadi issue addressed the merits of the claim—namely, whether the opinion in Kazadi should be retroactively applied to the case.  The State maintained that, as far as it was aware, Kazadi did not apply retroactively to convictions that occurred before the opinion was issued.  Kumar's counsel responded that Kazadi should be applied retroactively and that the nature of the case made it especially important for prospective jurors to be asked about the presumption of innocence and the burden of proof.  The circuit court denied the motion for a new trial on the ground that Kazadi did not apply retroactively and was not the law of Maryland at the time of the trial.  Given that the circuit court ruled on the merits of the Kazadi claim, it is clear that the court believed the issue to be

preserved.  Apparently, at that time, so did the State, for that matter, as the State did not raise an issue as to preservation in response to the motion.

The multiple steps that Kumar's counsel took—requesting both in writing and orally before the group *voir dire* that the Kazadi-type questions be asked, making before the group *voir dire* began an individual exception to the circuit court's refusal to ask each question, noting a continuing exception to the court's refusal to ask *voir dire* questions when given the opportunity after the group *voir dire*, and re-raising the issue of the circuit court's refusal to ask the Kazadi *voir dire* questions in a motion for new trial—were certainly sufficient to preserve the Kazadi claim for appellate review.

For the reasons herein, we conclude that Kazadi applies to any case pending in a trial or appellate court that had not become final on direct appeal when the opinion was issued, *i.e.*, cases in which there had not yet been a final disposition at the time that the opinion was issued, and in which the issue was preserved for appellate review.  In this case, both circumstances are satisfied.[15]  We reverse the judgment of the Court of Special Appeals and remand the case to the circuit court for a new trial on the first-degree murder charge.[16]

---

[15]Given our determination that the holding in Kazadi applies to cases in which there had not yet been a final disposition when the opinion was issued, we need not reach Kumar's alternative argument that not applying Kazadi here would violate the Equal Protection Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights.

[16]At oral argument, the parties agreed that, because the Court of Special Appeals reversed Kumar's conviction for openly carrying a dangerous weapon with the intent to injure on the ground of insufficient evidence, if there were a remand to the circuit court, the new trial would be on the first-degree murder charge only.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AS TO CONVICTION FOR FIRST-DEGREE MURDER. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH INSTRUCTIONS TO VACATE CONVICTION AND SENTENCE AND FOR NEW TRIAL ON FIRST-DEGREE MURDER CHARGE. RESPONDENT TO PAY COSTS.**

Circuit Court for Baltimore City
Case No. 119053002
Argued: November 9, 2021

IN THE COURT OF APPEALS

OF MARYLAND

No. 21

September Term, 2021
_____

AMIT KUMAR

v.

STATE OF MARYLAND
_____

Getty, C.J.
McDonald
Watts
Hotten
Booth
Biran
Murphy, Joseph F., Jr. (Senior
Judge, Specially Assigned),

JJ.
_____

Concurring Opinion by Biran, J.,
which McDonald, J., joins.
_____

Filed: December 20, 2021

I fully agree with the Court's holding that *Kazadi v. State*, 467 Md. 1, 9 (2020), "applies to cases in which there had not yet been a final disposition, regardless of whether a notice of appeal had been filed at the time the opinion in *Kazadi* was issued, and in which the issue had been preserved for appellate review." Slip Op. at 9-10. I concur somewhat more hesitantly in the determination that this Court should exercise its discretion to decide whether Petitioner, Amit Kumar, preserved a *Kazadi* claim for appellate review, rather than remand the case to the Court of Special Appeals to allow that Court to rule on preservation.

The Opinion for the Court, of course, is correct in stating that we have discretion to decide whether Kumar preserved the *Kazadi* issue. *See* Md. Rule 8-131(b)(1) (providing that, in a case decided by an intermediate appellate court, "the Court of Appeals *ordinarily* will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals") (emphasis added). In my view, several factors should inform this Court's decision whether to decide a question that, like the preservation issue here, was not decided by the intermediate appellate court and has not been raised in a petition or cross-petition for *certiorari*. Among those factors are: (1) whether the parties have asked the Court to exercise its discretion to decide such a question, or whether the Court would be acting on its own initiative in doing so; (2) whether the parties have had a fair opportunity to brief and argue their positions on the question in both the intermediate appellate court and this Court, or whether they would be prejudiced if this Court were to decide the question; and (3) whether there are any unusual circumstances that warrant deviation from this Court's normal practice to remand the case to the intermediate appellate court for that court to decide the matter.

Here, neither party has asked us to exercise our discretion to decide the preservation issue. Although the State argued in the Court of Special Appeals that Kumar failed to preserve an objection to the trial court's failure to ask his proposed *voir dire* questions number 15 and 16, the Court of Special Appeals expressly declined to "address the State's … failure-to-preserve argument[]" because it rejected Kumar's claim of error on the ground that *Kazadi* did not apply at all. Thus, because the Court of Special Appeals exercised its discretion *not* to decide the preservation question, there was no decision from the Court of Special Appeals on that point from which the parties could appeal. For that reason, the State did not file a conditional cross-petition for *certiorari* raising the preservation issue. Nor has the State asked us to exercise our discretion to decide the preservation question. Rather, the State argued on brief and at oral argument that the preservation issue is not properly before this Court, and that this Court therefore should remand the case to the Court of Special Appeals to rule on preservation.

Kumar also did not ask us in his briefs or at oral argument to exercise our discretion to decide the preservation question. Rather, Kumar claimed that the State waived any argument concerning preservation by failing to file a conditional cross-petition for *certiorari* on that point. The Court correctly rejects that contention. Slip Op. at 15 n.12.

Thus, the Court is acting on its own initiative in deciding the preservation issue. That distinguishes this case from several of the cases the Court cites in explaining the decision to address the preservation issue. For example, in *Matthews v. Amberwood Associates Ltd. P'ship, Inc.*, 351 Md. 544 (1998), in their cross-petition for a writ of *certiorari*, the defendants-respondents requested that the Court review a question that the

Court of Special Appeals had not decided concerning the defendants' application to amend their Answer to allege contributory negligence. This Court granted the plaintiffs' petition for *certiorari* and denied the cross-petition. *Id.* at 580-81. Nevertheless, in their brief to this Court, the defendants argued that "[t]he trial court erred ... in refusing to instruct the jury on the issue of contributory negligence." *Id.* at 581. After resolving the substantive issues in favor of the plaintiffs, the Court opted also to decide the question about contributory negligence that the Court had initially declined to review. *See id.*

In *Lizzi v. Washington Metro. Area Transit Auth.*, 384 Md. 199 (2004), the trial court dismissed Lizzi's claims on the ground of *res judicata.* The Court of Special Appeals affirmed, but not on the ground of *res judicata*. After Lizzi filed a *certiorari* petition, the respondent (WMATA) did not raise *res judicata* in its response to Lizzi's petition, nor did WMATA file a conditional cross-petition raising the issue. *Id.* at 205. However, WMATA addressed the *res judicata* issue in its brief to this Court. The Court decided to reach the *res judicata* question, rather than remanding the case to the Court of Special Appeals for the intermediate appellate court to consider whether *res judicata* barred Lizzi's claims. Significant to the Court's decision to exercise its discretion was the fact that *res judicata* was "extensively briefed in WMATA's brief before the Court of Special Appeals, as well as in WMATA's brief to this Court. Therefore, WMATA's *res judicata* defense cannot be said to have appeared out of thin air. It is not a surprise to petitioner. Additionally, petitioner responded to the issue in this Court by referring the Court to his briefing of this issue in the Court of Special Appeals." *Id.* at 206 n.6; *see also Suburban Hosp. Inc. v. Kirson*, 362 Md. 140, 177 (2000) (deciding to reach question concerning respondent's

alternate defense, despite the fact that respondent did not raise the issue in a cross-petition for *certiorari*, "inasmuch as the issue has been briefed and argued here").

Although this case differs from *Matthews*, *Lizzi*, and *Kirson* given the Court's *sua sponte* exercise of discretion, importantly the party against whom we decide the preservation question has not been prejudiced. At oral argument, in response to questioning from the Court, the State addressed whether Kumar preserved the *Kazadi* claim for appellate review. The State did not say that it was surprised by the Court's inquiry concerning the preservation question, or that it was unprepared to provide its position on preservation. Nor did the State ask for an opportunity to submit supplemental briefing on the question of preservation.[1] Rather, the State presented an argument concerning preservation that was consistent with its briefing in the Court of Special Appeals. In addition, the State said that the Court had the record of *voir dire* in the Circuit Court, as well the briefs of the parties in the Court of Special Appeals and their filings at the *certiorari* stage, which "illuminate" the issue of preservation.

In essence, the State at oral argument conceded the Court's point that "[w]e have everything that we need to determine whether Kumar's *Kazadi* claim is preserved for appellate review." Slip Op. at 17. Thus, the State effectively has acknowledged that it has had a fair opportunity to argue its position concerning preservation in both the Court of Special Appeals and this Court, and therefore, that it has not been prejudiced by the Court's

---

[1] Notably, the State did offer at oral argument to submit a letter to the Court providing citations to cases in which this Court has remanded to the Court of Special Appeals to decide questions that the intermediate appellate court declined to address when the cases were initially before it.

- 4 -

decision to address the preservation issue. Had the State instead represented at oral argument, in response to the Court's raising the topic of preservation, that it had more to say on the preservation issue than it had included in its Court of Special Appeals brief and its response to Kumar's petition for *certiorari*, we likely would not have concluded that "[w]e have everything that we need to determine whether Kumar's *Kazadi* claim is preserved for appellate review." In that event, we would have been well advised either to invite the parties to submit supplemental briefs on the question of preservation, or to remand the case to the Court of Special Appeals and allow the non-prevailing party there to decide whether to seek further review of the preservation question in this Court.

Given the State's position at oral argument, I agree with the Court's determination that we should decide whether Kumar preserved his *Kazadi* claim for appellate review.[2] I also agree that Kumar preserved his claim of error based on *Kazadi*.

---

[2] In reaching this conclusion, I do not rely on the circumstance that the substantive *Kazadi*-related question we have decided in this case and the preservation question are "interrelated and [that] there is not a non-*Kazadi*-related issue for the Court of Special Appeals to address." Slip Op. at 18. This Court previously has remanded cases to the Court of Special Appeals, despite the interrelationship between an issue that was properly before the Court and a question that was not decided by the intermediate appellate court. *See, e.g.*, *State v. Evans*, 352 Md. 496, 509 n.10, 530 (1999), *overruled on other grounds*, *Belote v. State*, 411 Md. 104 (2009) (where the Court of Special Appeals declined to decide whether there was probable cause to arrest a defendant at the time he was detained, remanding to the Court of Special Appeals to decide the probable cause issue after holding that the initial detention constituted an arrest and that a search performed at the time of the detention was a valid search incident to arrest). Conversely, in appropriate circumstances, this Court has decided questions that were not interrelated with the questions contained in the parties' *certiorari* petitions. *See, e.g.*, *Lizzi*, 384 Md. at 202-03. At least as a general matter, I do not perceive the salience of the interrelatedness of issues in assessing whether this Court should exercise its discretion to address an issue that the Court of Special Appeals opted not to decide, despite its interrelatedness with an issue that the intermediate appellate court did decide.

The fact that deciding the preservation issue now furthers the goal of judicial economy, and moots the possibility of the non-prevailing party in the Court of Special Appeals filing a petition for *certiorari*, is not a compelling reason by itself to depart from our normal practice to allow the Court of Special Appeals to decide a question that it did not address when the case was previously before it. To at least some extent, the interests of judicial economy and obtaining finality more quickly militate in favor of deciding all remaining questions in every case. Yet we generally remand to the Court of Special Appeals to decide a question that it previously did not decide and that was not raised in a petition or cross-petition for *certiorari*. In my view, a consideration of intra-judicial comity underlies our normal practice to remand to the Court of Special Appeals in such cases. Where the Court of Special Appeals has exercised its discretion *not* to decide a question in a case, we generally should respect that exercise of discretion and allow the Court of Special Appeals the opportunity to decide the question if it becomes necessary to do so after this Court has decided another question in the same case.

That being the case, I believe we generally should refrain from deciding an issue that the Court of Special Appeals elected not to decide and that was not raised by the parties in their petitions for *certiorari*, in the absence of a request by one or both parties that we do so, or in the absence of unusual circumstances that warrant deviation from this Court's normal practice.[3] Nevertheless, if we are satisfied that neither party will be prejudiced by our exercising discretion to reach the issue, it may be appropriate for us to do so.

---

[3] An example of such unusual circumstances can be found in *Sergeant Co. v. Pickett*,

As discussed above, neither party in this case has asked us to exercise our discretion to decide the preservation issue. In addition, there are no unusual circumstances here that warrant a departure from our normal practice to remand to the Court of Special Appeals to allow that Court to rule on the remaining issue. But for the State's effective concession that it is not prejudiced by this Court's *sua sponte* exercise of discretion to decide the preservation issue, I would remand to the Court of Special Appeals to rule on preservation in the first instance. Given the State's concession, I concur in the Court's exercise of discretion to decide the preservation question.

Judge McDonald has authorized me to state that he joins in this opinion.

---

285 Md. 186 (1979). In that case, this Court opted to decide an issue instead of remanding to the Court of Special Appeals, where there already had been a prior remand and the Court of Special Appeals on that remand had not "proceed[ed] according to the tenor and directions of [this Court's] mandate[.]" *Id.* at 193. This Court explained: "In the usual course of events, we would remand the case a second time to the Court of Special Appeals and again direct that it determine the substantive issue as it should have done when the appeal was before it in the first instance. But, considering the circumstances and the tortuous history of what began as a simple appeal, fundamental fairness to the litigants and the interest of judicial administration and economy dictate that the matter be resolved without further ado." *Id.*

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/21a21cn.pdf